AO 241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| **United States District Court** | **District** of Massachusetts | |
|---|---|---|
| **Name** George Perrot | **Prisoner No.** W-55061 | **Case No.** |

| **Place of Confinement** MCI-Cedar Junction P. O. Box 100 South Walpole, MA 02071 | |
|---|---|

| **Name of Petitioner** (include name under which convicted) George Perrot | **Name of Respondent** (authorized person having custody of petitioner) **V.** David Nolan, Superintendant |
|---|---|

**The Attorney General of the State of:** Massachusetts

**PETITION**

1. Name and location of court which entered the judgment of conviction under attack    Hampden

    Superior Court, 50 States Street, Springfield, MA

2. Date of judgment of conviction    January 9, 1992

3. Length of sentence Second Degree Life with other concurrent sentences

4. Nature of offense involved (all counts)    Numbers 85-5415 thru 85-5418 and 85-5420

    thru 85-5425 Armed Robbery, Aggravated Rape, Burglary, Assault in

    a dwelling, burglary and Indecent Assault and Battery

5. What was your plea? (Check one)
   (a) Not guilty        ☒
   (b) Guilty            ☐
   (c) Nolo contendere   ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

   _____

   _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury         ☒
   (b) Judge only   ☐

7. Did you testify at the trial? (Second Trial)
   Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒    No ☐

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

   (a) Name of court  Massachusetts Appeals Court No. 93-P-845

   (b) Result  Judgment Affirmed

   (c) Date of result and citation, if known  May 3, 1995, 38 Mass. App. Ct. 478

   (d) Grounds raised  Prosecutorial Misconduct, Erroneous Denial of Motion to
   Dismiss, Insufficient Evidence, Product Rule, Jury Impanelment
   and one area of ineffective assistance of Trial Counsel.

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

       (1) Name of court  Supreme Judicial Court

       (2) Result  Further Appellate Review Denied

       (3) Date of result and citation, if known  June 5, 1995 420 Mass 1104

       (4) Grounds raised  Same grounds presented and decided in 38 Mass. App.
       Ct. 478

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

       (1) Name of court

       (2) Result

       (3) Date of result and citation, if known

       (4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒    No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court  Hampden Superior Court

        (2) Nature of proceeding  Mass. Criminal Rule 30 Motion for a New Trial

        (3) Grounds raised  Ineffective Assistance of Direct Apppeal Counsel,
        Ineffective Asssitance of Trial Counsel and cumulative pre-

AO 241 (Rev. 5/85)

judicial and improper arguments by prosecutor that are same

issues as Grounds One, Two and Three

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐     No ☒

(5) Result   Motion for New Trial Allowed

(6) Date of result   September 11, 2001

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐     No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.          Yes ☒    No ☐   March 10, 2004 (attached)
(2) Second petition, etc.        Yes ☐    No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.    Ground one: _____ See attached pages _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ See attached pages _____

_____

_____

_____

_____

_____

B.    Ground two: _____ See attached pages _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ See attached pages _____

_____

_____

_____

_____

_____

12B.  Ground Two:  Sixth and Fourteenth Amendment violation of Petitioner's right to the effective assistance of Trial Counsel: n.4/

Supporting Facts:  As set out in the State Superior Court New Trial Motion Memorandum of Law, set out in Superior Court Judges decision pages 12-15, 33 n. 17, 38-39, set out in 01-P-1626 Appellate brief pages 10-12, 41 and pro se Alofar, pages 2, 19-35, 37-46, incorporated herein by reference, ineffective trial counsel's failure to make sufficient timely objections and renew objections to the Prosecutor's improper argument set out in Ground Three, infra, incorporated herein, was non-strategic error that prejudiced Petitioner both at trial and in his direct appeal.

---

n.3/  The complex procedural problems direct appeal Counsel caused are illustrated by **Pliler v. Ford**, 124 S.Ct. \_\_\_\_ (June 21, 2004) and Petitioner also seeks equitable tolling.

n.4/  When Trial Counsel failed to make sufficient timely objections and failed to renew his objections, **Washington v. Hofbauer**, 228 F.3d 689, 700-709 (6th Cir. 2000).  After closing argument as required to preserve issues for appeal, Trial Counsel was functioning as Appellate Counsel to the extent his failure to preserve all the issues adversely effected the direct and collateral appeals, **Davis v. Secretary Department of Correction**, 341 F.3d 1310 (11th Cir. 2003).

n.5/  **Pagano v. Allard**, 218 F.Supp. 2d 26, 33-37 (D.Mass. 2002); **Mahorney v. Wallman**, 917 F.2d 469, 471 n.2-474 (10th Cir. 1990); **United States v. Udechukwe**, 11 F.3d 1101, 1105 (1st Cir. 1993); **Paxton v. Ward**, 199 F.3d 1197, 1216-1218 (10th Cir. 1999); **United States v. Richter**, 826 F.2d 206, 209 (2nd Cir. 1987); **Dilosa v. Cain**, 279 F.3d 259, 265 (5th Cir. 2002); **United States v. Beckman**, 222 F.3d 512, 527 (8th Cir. 2000); **United States v. Watson**, 121 F.3d 695, 702 (D.C. Cir. 1999); **United States v. Blakey**, 14 F.3d 1557, 1562 (11th Cir. 1994).

AO 241 (Rev. 5/85)

C.    Ground three:  _See attached pages_ _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____, _See attached pages_ _____

_____

_____

_____

_____

_____

D.    Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐        No ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)    At preliminary hearing  _James Hammerschmith._ _____

_____

(b)    At arraignment and plea _____

_____

AO 241 (Rev. 5/85)

(c) At trial _____ John Ferrara _____

(d) At sentencing _____ John Ferrara _____

(e) On appeal _____ Kenneth Seiger _____

(f) In any post—conviction proceeding _____ Stewart Graham _____

(g) On appeal from any adverse ruling in a post—conviction proceeding _____

_____ Stewart Graham and James Fox _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

Yes ☒    No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐    No☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐    No☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.
and this Court grants equitable tolling or reinstates one year
28 USC 2244 filing time based on the ineffective
assistance of direct appeal counsel, if the
Attorney General raises a filing time limit
defense.

Signature of Attorney (if any)
George Perrot

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____ July 14 2004 _____
(date)

Signature of Petitioner
George Perrot

# Supreme Judicial Court for the Commonwealth of Massachusetts
## One Beacon Street, Third Floor, Boston, Massachusetts 02108
### (617) 557-1020

James M. Fox, Esquire
84 State Street, Suite 300
Boston, MA 02109



RE:  Docket No. FAR-13909

**COMMONWEALTH**
**vs.**
**GEORGE D. PERROT**

      Hampden Superior Court No. 85-5415-18,20-25
      A.C. No. 2001-P-1626

### NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that on 03/10/04, the above-captioned Application for Further Appellate Review was denied. The Motion to File Application Late, the Motion to File a Supplement to the Application, and the Motion to File Supplement Late are allowed.

                              Susan Mellen, Clerk

Dated: March 10, 2004

To:  Jane Davidson Montori, A.D.A.
     James M. Fox, Esquire

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS

SUPREME JUDICIAL COURT

ALOFAR NO. _____

[formerly 01-P-1626]

COMMONWEALTH,
APPELLANT

V.

GEORGE PERROT,
APPELLEE

## SUPPLEMENTAL APPLICATION FOR FURTHER APPELLATE REVIEW OF APPELLATE REVERSAL OF AN ALLOWED NEW TRIAL MOTION

Now comes appellee George Perrot, and re-quests Mass.App.P. Rule 27.1 further appellate review of the reinstatement of his multiple life sentences by appeals court COMMONWEALTH V. PERROT, (5/12/03) reversal of Superior Court Judge Wernick's allowance (on 9/11/01) of his Mass.Crim. P. Rule 30(b) motion for a new trial, on the same issue's mailed to direct appeal counsel by appellee Perrot in 1993-1994, which appellate counsel refused to brief in COMMONWEALTH V. PERROT, 38 Mass.App.Ct. 478(1995), while now requesting competent n1/ counsel be assigned to rebrief all issues for full court ruling properly presenting all ALOFAR questions for review.

December    , 2003

Respectfully Submitted

Copy served on Hampden
County District Attorney's
Office. cc. C.P.C.S. with
request for competent
counsel assignment

–1–

George Perrot, pro se
P.O. Box 100
So. Walpole, Ma. 02071

n1/See motion for leave to late file supplemental ALOFAR based on prior counsel's abandonment and inexperienced new reassig-ned counsel's failure to include ineffective appellate and trial counsel legal arguments while omitting evidentiary facts neces-sary for proper miscarriage of justice analysis.

V. WHERE THE BASIS OF TRIAL Counsel'S CONTEMPORANEOUS OBJECTION TO OBVIOUSLY CREDIBILITY VOUCHING AND EX-PLOITATION OF EXCLUDED GOVERNMENT MISCONDUCT EVIDENCE WAS CLEARLY IMPROPER ARGUMENT, WHETHER THE SUPREME JUDICIAL COURT SHOULD FIND ANY FURTHER OBJECTION FUTILE AND UNNECESSARY TO PRESERVE THE ISSUE, COMMONWEALTH V. DEBENEDETTO 414 MASS. 37, 44 n. 10 (1992); OSBORNE V. OHIO 495 U.S. 103, 123-126 (1990) ?

VI. WHETHER THE APPEALS COURT DECISION REVERSING THE AL-LOWED MOTION FOR NEW TRIAL WAS CLEARLY ERRONEOUS WHERE THE PANEL FAILED TO RECOGNIZE THE CONTEMPORANEOUS OB-JECTION, COMMONWEALTH V. KOZEC 399 MASS. 514, 532 (1987) FAILED TO CONDUCT A PROPER CUMULATIVE CLOSING ARGUMENT ERROR ANALYSIS, COMMONWEALTH V. McCOY 59 MASS. APP. Ct. 284, 291-297 (September 15, 2003) ?

VII. WHETHER THE APPEALS COURT DECISION REVERSING THE AL-LOWED NEW TRIAL MOTION MISTAKENLY RELIED ON UNRELATED STANDARD BURDEN OF PROOF INSTRUCTIONS AND STANDARD GENERAL INSTRUCTION WHICH DID NOT PROPERLY EXPLAIN TO JURORS THAT THE PRESUMPTION OF INNOCENCE "REMAINS WITH THE ACCUSED THROUGHOUT EVERY STAGE OF THE TRIAL IN-CLUDING AND MOST IMPORTANTLY, THE JURY'S DELIBERATIONS" MAHORNEY V. WALLMAN 917 F.2d 469, 471-4 n. 2 (10th Cir. 1990); COMMONWEALTH V. KANE 19 MASS. APP. Ct. 129, 139 (1985), AND WHETHER SUCH STANDARD INSTRUCTIONS WERE IN-SUFICIENT TO CURE THE PROSECUTORS FORCEFUL REPEATED MISSTATEMENTS THAT THE PRESUMPTION OF INNOCENCE DISAP-PEARED BEFORE THE JURY BEGAN IT'S DELIBERATIONS ?

## STATEMENT OF PRIOR PROCEEDINGS

Following December 16,1985 indictments and December 14, 1987 convictions the Supreme Judicial Court set aside the verdicts and remanded this case for a new trial, COMMONWEALTH V. PERROT, 407 Mass. 539, 549 (1990).

The defendant was reconvicted of assault in a dwelling, burglary, unarmed robbery, aggravated rape and indecent assault and battery on January 9, 1992 receiving several life sentences with lesser concurrent sentences to be served consecutively to the 10 to 12 year sentence he was then serving in a related burglary case. These convictions were affirmed in COMMONWEALTH V. PERROT, 38 Mass. App. Ct. 478 (1995) ALOFAR denied 420 Mass. 1104 (1995) after assigned attorney Kenneth Seiger refused to brief the following meritorous closing argument issue's.

Based on the attached 1993-1994 letters which assigned appellate attorney Seiger disregarded, successor attorney Stewart Graham filed a Mass. Crim. P. Rule 30(b) motion in 2000 which Superior Court judge Lawrence B. Wernick allowed (docketed September 11, 2001), in a thirty nine page decision attached hereto, which cited many of the decisions and same closing argument issue's direct appeal attorney Seiger refused to brief after receiving the attached 1993-1994 letters

In his opening statement the prosecutor fully acknowledged the weak disputed evidence of aggravated rape by telling the jurors that "you'll" see pictures of Mary Prekop as she looked shortly after this attack. and he beat her face, he kicked her in her thigh and he raped her. <u>He put something in her vagina</u>. <u>She won't tell you what it</u> <u>was</u>. <u>She doesn't know</u>, something (indicating) (I:106-107) "Now, George Perrot cooperates with the police <u>to some extent</u>. He provides some information and he confesses to them. Now, <u>I don't mean that he confesses fully to all these crimes be-</u> <u>cause George Perrot is unable to acknowledge what he did to</u> <u>Mary Prekop... He... insists throughout that he didn't touch</u> <u>anybody</u>" (I:108)

The victims testimony failed to clearly indicate whether actual penetration took place:

> "Q. Now, what happened after he pulled you and you were on the ground ?
> A. Well, I'm going to say he molested me."
> (I:127)

> "Q. When you say he molested you, I know it's difficult, could you describe for the jury exactly what it is he did ?
> A. Okay. Molested isn't a good enough answer, seeing you want more specific, after he got on top of me and he molested my private part, is that enough ?
> Q. Let me ask you, you've never been, is that correct ?
> A. (witness indicating)"
> (I:138)

> "Q. When you say that he molested your private parts let me just ask you, ma'am, did he put something inside of you ?
> A. He must have because it made me feel uncomfortable and something was wrong.
> Q. You don't know what it was ?
> A. No."
> (I:140)

## OBVIOUS FACTUAL FLAWS IN THE 01-P-1626 DECISION

The 01-P-1626 docket entries reflect notations for 11/15/01 stating "transcripts received: **NONE**" before noting the Commonwealth submitted one volume of transcripts described as the "Judges charge" (which would be volume IV) while nowhere in the 01-P-1626 record does any mention of the three volumes of retrial evidence transcripts appear, nor is the transcript of the new trial motion hearing mentioned. All facts noted without transcript volume or page citation in the thirty-one page 01-P-1626 panel decision appear to have been taken from the one-sided Commonwealth brief statement of facts. The 01-P-1626 panel also took summaries of facts from the prior Appellate decisions in this case. Because the 01-P-1626 panel refused to consider ineffective assistance of counsel issue's the panel's decision was contrary to controlling decisions of the United States Supreme Court which require the totality of the evidence to be considered for such claims.

The 01-P-1626 panel abused it's discretion by omitting many material facts, such as the panel selectively avoiding many Mass. Crim. P. Rule 30 (b) findings by the motion Judge, including but not limited to the panel misrepresenting at page 30, footnote 22 of it's decision: "despite the strength of the Commonwealth's case, the motion Judge expressed **TWO** difficulties," id, when the panel agreed "with the motion Judge as to the strength of the Commonwealth's case" (01-P-1626 at page 29) but ommitted to mention motion

-9-

stantive trial evidence that the crime-scene gloves were "identical to the defendant's sisters gloves" (01-P-1626 page 6) as misrepresented by the Commonwealth's brief. The defendant's sisters testimony was corroborated by officer Thomas Jarvis who admitted he followed up that lead on the gloves by "bringing them to Lisa's house" (III: 498) "And she told you, no they're not my gloves, correct" to which Jarvis responded "that's correct" (III: 498-499).

A closer inspection of the trial evidence, in light of some unknown officers involvement with the false confession ruse, leads to an inference that the police im-properly added the gloves to the defendant's statement while the 01-P-1626 panel again overlooked a material Rule 30 (b) finding made at pages 36-37 of motion Judge Wernick's decision:

> "This glove had a blood stain on it from which only a <u>single genetic marker could be determined</u>... Pre-kop denied seeing any gloves in the bedroom before she returned from the hospital. <u>She denied referring to any such gloves in her written state-ment and suggested that any reference to them in her statement must have been added by the police.</u> While Kelly testified that the defendant's sister said that the gloves were similar to ones she owned which she could not locate, <u>defendant's sister denied ever saying that.</u> Kelly's testimony at trial that he found one glove on the bed and one on the floor differed from earlier testimony in which he said both gloves were on the floor. "<u>There were also substantial issue's regard-ing whether the defendant actually gave a written confession to the break-in,</u> and if so, whether it was volun-tary."

-11-

At no point in the thirty-one page 01-P-1626
decision did the panel consider or make rulings or findings on
correct appellate review question of "whether a motion Judge
**committed significant error of law or other abuse of discretion**
in allowing a defendant's motion for a new trial" n4/. The dif-
ference between the foregoing standard and the risk of a sub-
stantial likelihood of miscarraige of justice standard is a
question left open in COMMONWEALTH V. MARTIN, 427 Mass. 816,818
n.2(1998) and this ALOFAR presents a question of whether de novo
review was legal error.

The 01-P-1626 panel's omission of finding any
"significant" error of law, or "abuse" of discretion, merely
stated "we respectfully disagree with the motion Judge" (page 7)
and "we disagree with the risk assessment" (page 29) n5/.

Where "the motion judge here gave throrough
attention to the entire record", COMMONWEALTH V. HILL, 432 Mass.
704,710(2000), without having the entire record before the ap-
peals court, the 01-P-1626 panel gave no defference to Judge
Wernick and failed to find the MARTIN and HILL case required

-13-

---

n4/ Quoted from COMMONWEALTH V. MARTIN, 427 Mass. 816,817(1998)
("by that standard, the issue in this case is whether the
Judge erred in ruling, on his largely unchallenged findings,
that the defendant's trial counsel was ineffective"); COMMON-
WEALTH V. HILL, 432 Mass. 704,710(2000); COMMONWEALTH V. GRACE,
397 Mass. 303,307(1986).
n5/ In analogy, because an "unreasonable application of federal
law is different from an incorrect application of federal law",
WILLIAMS V. TAYLOR, 529 U.S. 362,410(2000) this case presents
a similar question of whether the "court of appeals applied
harmless-error review in an objectively unreasonable manner",
MITCHELL V. ESPARZA, 124 S.Ct.7,12;____U.S.____; 74 CR.L.RPTR.
2063,2064(2003); LOCKYER V. ANDRADE, 538 U.S. 63,75-77(2003)

evidence is the testimony of the witness who claims to have

knowledge of the facts which the witness either saw or heard

or somehow sensed. **The only question is whether or not you

believe the witness**"(IV:642).

Without the defendant waiving his own personal

Sixth Amendment Confrontation Clause rights n7/ or a ruling on

a "motion to squash a subpoena" the trial judge noted "that

there is a stipulation between counsel that the fresh complaint

allegedly made by Mary Prekop, the alleged victim, to officer

Popko will be introduced through that witness, that is Mary

Prekop, and offered as an exhibit thereby making unnecessary

for the appearance and testimony of Marianne Popko who is of

such a medical condition as it would be extremely detrimental

to her health if she were to testify or be required to"(I:17).

As set out at pages 6-8 of the ALOFAR,Supra,

Mary Prekop did not testify to any rape taking place and the

fresh complaint statement taken by non-testifying officer

Marianne Popko was the only [obviously inadmissible] hearsay

evidence of penetration:

"he put something into my

-15-

_____

n7/ Because defense counsel does not have the power to waive
Confrontation Clause right that are personal to an accused
and only a defendant can make such a waiver on the record,
which did not occur in the case at bar, CLEMMONS V. DELO, 124
F.3d. 944, 956 (8th Cir. 1997) and erroneously admitted evi-
dence cannot be considered in a miscarriage of justice analy-
sis, COMMONWEALTH V. ALPHAS, 430 Mass. 8, 13 n.6 (1999) The
fresh complaint statement should have been disregarded by the
appeals court,id.

With no possible strategic reason for his omission, trial attorney John Ferrara failed to object (IV:630) to the prosecutor's obviously improper closing argument urging jurors to consider the hersay fresh complaint statement for it's full probative value n8/ as if it had been live testimony:

> "Mary Prekop is an honest woman and she can't even tell you exactly what was done to her. Eighty year old woman, unmarried, trying to describe what happened to her. She can tell-- all she can tell you, something was put inside my private parts. She didn't see it with her own eyes."
>
> (IV:618)

> "I mean this is all she could think to do was close her eyes and be pushed into her bedroom and on the floor and beaten **and raped.**"
>
> (IV:617)

> "How difficult would it be for the police to make up a statement and have him sign it ? **I raped this old Lady.**"
>
> (IV:624)

> "This 17 year old boy isn't going to acknowledge that he committed an aggravated rape on an 80 year old woman... **There isn't a confession to a rape there... The evidence of his guilt is overwhelming.**"
>
> (IV:626)

-17-

---

n8/ COMMONWEALTH V. BASSETT, 21 Mass.App.Ct. 713,714-717(1986)

n9/ Knowing the victim would not testify to penetration, based on the hearsay fresh complaint statement the prosecutor's opening statement misrepresented Mary Prekop would testify that "he raped her. He put something in her vagina" (I:106)

plaint hearsay could not be considered as substantive evidence
for it's truth or probative value (I:170-173).

### FACTS RELATED TO OBVIOUSLY IMPROPER ARGUMENT EVISCERATING THE PRESUMPTION OF INNOCENCE WHICH COUNSEL FAILED TO OBJECT TO AND REFUSED TO BRIEF IN THE DIRECT APPEAL:

Recognizing the problem he had with ambiguous
extremely weak, or insufficient, evidence of rape penetration,
(set out at ALOFAR pages 6-8, 14-18, Supra) n12/, the prose-
cutor links the otherwise inflamatory rape to four misleading
related burden shifting arguments eviscerating the presumption
of innocence:

> "Mr. Vottero: He stood before you at
> the beginning of this trial presumed
> innocent and no evidence had been in-
> troduced. He is not innocent anymore.
> And I suggested to you, in the opening
> Statement, that the proof in this case
> was not going to be beyond a reason-
> able doubt. It was going to be ines-
> capable. There would be no way around
> it".
>
> (IV:615)
>
> "Mr. Ferrara: Objection, your honor.
>
> The court: Hold it.
>
> Mr. Vottero: It's the kind of world

-19-

n12/ The record shows the prosecutor knew what the key weak-
ness in his case was when he stated that "while Mary Prekop
couldn't sit here and say, he did that to me. All the other
evidence says that" (IV:618). The real problem was no physical
or medical evidence of penetration existed and there was no
other substantive evidence on that essential element.

Stating "your strongest preserved trial issue (other than motion in limine) was the prosecutor's improper closing argument... Misstatements of law which derogated presumption of innocence... IV:615,626-627,628,629" and another letter which clearly stated, "I got the missing cites... finally, MAHORNEY V. WALLMAN, 917 F.2d. 469,471 n.2-474(10th Cir.1990) won a Fed habe after state denied criminal appeal only because the prosecutor argued the presumption of innocence didn't apply anymore, just like your prosecutor did Tr.IV:615,629, and the guys judge failed to instruct, COMM. V. KANE, 19 Mass.App.Ct. 129,139-142(1984) that the presumption of innocence continues throughout the trial right into the jury deliberations,id, just like your judge forgot to do Tr.IV:635-637 see MAHORNEY, 917 F.2d. at 471 n.2, and KANE, 19 Mass.App.Ct. at 139-142,id." n13/

Attorney Seiger's attached 9/4/93 letters refusing to recognize meritorious issues drafted by another person and stating "I also have been intructed by C.P.C.S. not to communicate with him" n14/ represents an external factor impeding the appeal and good cause for excusing all procedural defaults.

-21-

---

n13/ Because this court may take judicial notice of related case records, BROOKLINE V. GOLDSREIN, 388 Mass. 443,447 n.5 (1983); FLYNN V. BRASSARD, 1 Mass.App.Ct. 678,681(1974); CONSERVATION FOUNDATION V. RUSSELL, 2 Mass.App.Ct. 868,869(1974) these letters are included from files of PERROT V. SEIGER/WALKER/LEAHY/C.P.C.S., et,al. Suffolk No. 96-1168-H, and are subject to a pending Mass. App. P. Rule 8(e) motion to expand the record to conform to the truth, filed with the appeals court with a late rehearing motion at the time of the ALOFAR filing,id.

n14/ C.P.C.S. staff sharing their post-conviction class action conflict of interests, HABEREK/DUPONT/CRAWLEY/DAVIS/DAVILA V. C.P.C.S./WALKER/LEAHY,et,al. Suffolk #92-5863-D interfered with Seiger's duty to exercise his own professional judgment,id.

the benefit of the presumption of in-
nocence only at the beginning of trial
and that the presumption meant that no
adverse inference could be drawn from
the fact that the defendant had been
indicted or arrested, with no indica-
tion that the presumption lasted
throughout the case unless and until
the Commonwealth has proven the defen-
dant guilty beyond a reasonable doubt.
These instructions compounded the mis-
leading and confusing effect on the
jury of the prosecutor's statement that
the defendant was no longer presumed
innocent. The judge, further more, never
told the jury that the lawyer's state-
ments regarding the law were to be dis-
regarded to the extent they differed
from the judge's instruction."

Further appellate review is equested to re-

solve the conflict between the 01-P-1626 panel decision and

the new trial motion judge's (page 25) finding that "the

prosecutor's repetitive and pervasive misstatements of the

law were potentially exacerbated, instead of corrected, by

the judge's instructions regarding the presumption of in-

nocence. Moreover, the same statements impermissibly vouched

for the credibility of the Commonwealth's witnesses", id.

### MATERIAL FACTS RELATED TO NONEXISTANT RAPE
### CHARGE CREDIBILITY VOUCHING AND INEFFECTIVE
### ASSISTANCE OF TRIAL AND DIRECT APPEAL COUNSEL:

Trial attorney John Ferrara failed to object

to repeated credibility vouching for the alleged victim which

included "Mary Prekop is an honest woman. A very honest woman"

(IV:616), "Mary Prekop's an honest woman and... all she can

tell you, something was put inside my private parts" (IV:618)

-23-

terous." n15/

(IV:626-627)

page 8 of the 01-P-1626 decision incorrectly noted the absence of any contemporaneous objection, as did pages 20-23 which cited general jury instructions as being sufficient to preclude a miscarriage of justice finding while pages 28-31 noted the strength of the Commonwealth's case including the confession precluded a cumulative error miscarriage of justice finding, without noting the confession did not apply to the rape charge that was unsupported by testimony.

Judge Wernick's new trial motion decision citation to the RICHTER case at page 24 was foreshadowed seven years earlier by 1993-1994 letters to direct appeal attorney Kenneth Seiger that clearly alerted him to the fact trial counsel "correctly objected to... credibility vouching for police IV:626-627 which under COMMONWEALTH V. KOZEC 399 Mass. 514(1987) preserved the rest of the erroneous prosecutor's argument... The objected to credibility vouching "police on trial" theme argument and objected to comment that they would not risk their careers, wouldn't create evidence, be part of a conspiracy Tr.IV:626-627 et.seq. are exactly what won a few cases, U.S. V. RICHTER, ____F.2d. ____(2nd Cir.1989), COM-

-25-

n15/ Justice Laurence found a substantial risk of miscarriage of justice from a less egregious credibility vouching closing argument in COMMONWEALTH V. McCOY, 59 Mass. App. Ct. 284,294-297(September 15, 2003)

After the prosecutor's sidebar objection successfully excluded all state of mind evidence the defendant had told his sister that could have supported a jury finding that the confession was involuntary (III:542-544), the prosecutor made three focused arguments bolstering voluntariness of that confession:

> "What evidence is there that this statement is voluntary ? ... Now, lets's take Tom Kelly and Tom Jarvis. You know, most of us don't have much experience with police. These are people on call 24 hours a day. Something happens they come down. They probably had about the same amount of sleep as George Perrot. That's the nature of the job... The statement is voluntary."

(IV:621)

> "The statement is voluntary... And Tom Jarvis told you, look, despite what you may hear or think in the movies it's my experience it doesn't do much good to yell and scream at somebody and physically threaten them. He has a different approach, an approach designed to have somebody open up, to be honest with him."

(IV:621-622)

> "These are voluntary statements and because they are voluntary statements it really doesn't make much difference. There isn't a confession to a rape there. There is a confession being in the home. There is not more than one person in there on 27 Malibu Drive with Mary Prekop on November 30. The evidence of guilt is overwhelming, but take a minute and put yourself in the world of George Perrot's innocence. What kind of world is it where George Perrot is innocent ? It's a world where two FBI agents get together and risk their reputations and careers to create evidence to reach conclusions not

-27-

impact of the three sections of argument on the juror's eval-
uation of the voluntariness of the confession.

The attached 1993-1994 letters received by
direct appeal attorney Seiger repeatedly stated "exclusion of
evidence on involuntariness would be per se reversible error
under CRANE V. KENTUCKY, 476 U.S. 683(1986)", because "under
the federal rule a state court can never exclude evidence bear-
ing on involuntariness" while page 6 of one letter noted the
closing argument "includes a golden rule violation, IV:626-627,
in which the prosecutor asks the jury to put themselves into
George Perrot's (position) world", id.

### MATERIAL FACTS RELATED TO THE PROSECUTOR'S
### ENLISTING JURORS TO JOIN THE GOVERNMENT'S
### TEAM COVERING-UP THE ABSENCE OF RAPE EVIDENCE

This appeal involves sexual assualt claims
where the alledged victim's contemporaneous medical records
were not introduced, but a non-testifying witnesses words
characterizing fresh complaint hearsay evidence was the only
evidence of rape penetration presented at trial.

Neither the motion judge nor the appeals
court panel discussed the weakness of such evidence when it
addressed the following unobjected to closing argument by
the prosecutor:

> "You can look at the pictures of Mary
> Prekop without appreciating what she
> is going through as she is being as-
> sulted. No, she doesn't recall whether
> there was hair on his face in the bed-
> room. And he committed an indecent as-

-29-

MATERIAL FACTS RELATED TO THE PROSECUTOR
REPEATEDLY TAKING UNFAIR ADVANTAGE OF
<u>EXCLUDED EVIDENCE DURING CLOSING ARGUMENT</u>

In addition to the foregoing argument twist-
ing the defendant's denial of any sexual assault into a joint
juror and prosecutor finding of rape, without supporting evi-
dence, the prosecutor took unfair advantage of excluded evi-
dence in the following portions of his closing argument:

> "This statement, a line tells you that
> he was rational and voluntary because
> it wasn't as has been suggested to you,
> created by the police... How difficult
> would it be for the police to make up
> a statement and have him sign it ? I
> raped this old lady."
>
> (IV:624) <u>n16</u>/
>
> "They hope he's going to open up to
> them and they write down what he
> tells them and they don't add to it
> to make it better."
>
> (IV:625)
>
> "There is not more than one person
> in there on 27 Malibu Drive with
> Mary Prekop on November 30. The evi-
> dence of his guilt is overwhelming,
> but take a minute and put yourself
> in the world of George Perrot's in-
> nocence. What kind of world is it

-31-

---

n16/ The prosecutor's inclusion of the non-existant rape was
also argued as part of the closing"

> "You know, this case has a confession.
> Found in-- This confession was volun-
> tary. You don't need anything else. Do
> you believe this is trustworthy ? You
> believe it to be the truth and this case
> is over."
>
> (IV:620-621)

new trial motion decision judge Wernick found that "having
successfully objected to defense counsel's argument that the
police did not have sufficient information to obtain a war-
rant the prosecutor was not than at liberty improperly to
suggest to the jury that they had not heard facts concerning
the defendant's involvement in those crimes, which Kelly may
have known when he came to the police station",id.

During the February 25, 1991 evidentiary
hearing, on a motion to dismiss, officer Thomas Kelly testi-
fied thatsubterfuge and deception was an acceptable police
practice (page 41) before prosecutor Francis Bloom testified
concerning the September 1985 Marchand case investigation
which involved "sergeant Kelly" and "detective Jarvis" (page
56) who "had indicated to (Bloom) they had suspects" (page 47),
"Mr. Timmerman and Mr. Atkins" who police "felt very strongly
that they had entered Mrs. Marchand's home with Mr. Perrot and
they were involved in that particular incident and they had
discussion with me as to the fact that they wanted to approach
the two of them and talk to them. Basically, they were look-
ing for approval as to what type of subterfuge they could use
in talking with them" (pages 61-62).

Robert Timmerman linked the Marchand case
to the Prekop case when he testified at the motion to dis-
miss hearing as follows:

> "Q. And at the time that you went to
> the police station and spoke with
> district attorney Bloom were you
> aware whether or not Mr. Perrot had
> already been convicted ?
> A. No.

-33-

rape case (II:386-387) without any voir dire and without
judge Simons reviewing the foregoing transcripts linking the
Marchand case to the Prekop case, id.

The 1993-1994 attached letters recieved by
direct appeal attorney Seiger clearly alerted counsel to the
fact that the "prosecutor using the evidence he excluded a-
gainst you in his closing argument, well actually exploited
the absence of evidence he had succeeded in excluding, COMMON-
WEALTH V. HARALDSTAD, 16 Mass.App.Ct. 565,568(1983) Tr.IV:626-
627 (see also 620)" and noted "the prosecutor's improper
closing argument that your lawyer correctly objected to spec-
ulative argument IV:620" on absense of evidence officer Kelly
knew.

Because of direct appeal counsel's non-
strategic failure to brief this the defendant's convictions
were affirmed based on erroneous findings of "an absence of
prejudice", COMMONWEALTH V. PERROT, 38, Mass.App.Ct. 478,482
(1995).

Neither judge Wernick's new trial motion
decision (pages 15-20) nor the 01-P-1626 panel decision (page
31, footnote 23) considered or decided the second prong of
the federal test for ineffective assistance of appellate coun-
sel concerning the question of whether the result of the
direct appeal probably would have been favorably different had
attorney Seiger briefed the prosecutor's closing argument
taking unfair advantage of motion in limine excluded evidence,
id.

## LEGAL ARGUMENT

### A REMAND TO FULLY DEVELOP THE RECORD IS NECESSARY
### TO RESOLVE MANY INEFFECTIVE TRIAL COUNSEL ISSUES:

The Appeals Court did not conduct a culmulative n1̸/ineffective assistance of trial counsel analysis including attorney Ferrara's failure to object, CARGLE V. MULLIN, 317 F.3d 1196,1217(10th Cir.2003) to repeated misstatements of the law concerning the presumption of innocence (IV:615,629), references to evidence not in the record (IV:621-622,626-627) references to excluded evidence (IV:620,624-627) and enlisting jurors to side with the government (IV:630) which was the basis for granting a new trial with the improper credibility vouching (IV:626-627) objection (IV:627) that was sufficient because Mass. Rules. Crim. P. 22 does not require a party to state the grounds of an objection, COMMONWEALTH V. RIVERA, 425 Mass. 633, 636(1997) and such proper objection opened the entire closing argument for review on the merits, COMMONWEALTH V. KOZEC, 399 Mass. 514,523(1987) under a cumulative error analysis, COMMON- WEALTH V. McCOY, 59 Mass. App. Ct. 284,291-297(2003). ALOFAR should be granted to resolve question of whether presenting the issue of ineffective assistance of trial counsel, to fully develop the record, in a post-direct appeal motion proceeding is proper and the failure to raise such a claim in a direct appeal may not waive the issue, MASSARO V. UNITED STATES, 123 S.Ct. 1690,1694-1696(2003) ?

---

n1̸/Attorney Ferrara failed to specifically move for a directed verdict of not guilty on the rape indictment base on insufficient evidence of penetration (III:525,558-560),BARNARD V. LANE 819 F.2d 798(7th Cir.1987),failed to move for c.261§§27A-27D fee's for a michondrial DNA hair analysis expert to test the preserved hair sample (II:380) or obtain the services of a crime snene expert to testify for the defense, SIMS V. LIVESAY, 970 F.2d 1575(6th Cir.1992),failed to move to dismiss or to exclude the confessions based on the interrogating officer destroying his notes (III:512) COMMONWEALTH V. HENDERSON 411 MASS. 309,310- 311(1991),and failing to object (IV:669),OYOLA V. BOLES, 947 F.2d 928(11th Cir.1991) to jury instructions that mistakenly characterized occupied dwellings as falling under an inapplicable law governing an unoccupied building and omitting the essential element of intent to commit larceny over $250.00 for the crime to be a felony (IV:660-666) COMMONWEALTH V. HILL, 57 MASS. APP. Ct. 240, 249(2003).

## AN EVIDENTIARY HEARING SHOULD BE ORDERED ON
## REMAND TO DEVELOP THE RECORD ON THE UNWAIVED
## ISSUE OF INEFFECTIVE DIRECT APPEAL COUNSEL:

A remand for an evidentiary hearing would be appropriate to fully develop the record concerning C.P.C.S. directions to direct appeal attorney Seiger to disregard the meritorious closing argument issues described in the attached 1993-1994 letters, MAPES V. COYLE, 171 F.3d 408,427-429(6th Cir. 1999) because "evidence of alleged conflicts of interest might be found only in attorney-client correspondence", MASSARO,Supra, 123 S.Ct. at 1694. Further appellate review should be granted because the appeals court refused to decide the ineffective direct appeal counsel claim presented to the 01-P-1626 panel following the new trial motion Judge's decision (page 13-14) finding that "the defendant's claim that appellate counsel provided ineffective assistance obviously could not have (been) included in his direct appeal and has not been waived", id.

Analysis of an ineffective appellate counsel claim requires a court to determine whether the omitted issues were obvious from the record, and more likely to result in relief than the weaker issues briefed by counsel, COMMONWEALTH V. SOWELL, 34 Mass. App. Ct. 209(1993); GRAY V. GREER, 800 F.2d 644,646(7th Cir.1986).

In his direct appeal the court held that other issues briefed by counsel were "without merit" and counsel failed to show any harm or prejudice resulted from exclusion of forged confession misconduct, COMMONWEALTH V. PERROT, 38 Mass. App. Ct. 478,481-482(1995) without considering the prosecutor's taking unfair advantage of the excluded evidence, COMMONWEALTH V. HARALD-STAD, 16 Mass. App. Ct. 565,568(1983) by arguing "how difficult would it be for the police to makeup a statement and have him sign it ?" or "add to it to make it better". (IV:624-625) urging jurors to disbelieve "Tom Kelly and Mr. Jarvis (got) together to create evidence to pin on this poor man. It's the kind of world where for him to be innocent there has to be such a conspiracy, you can't believe... that's preposterous. It's preposterous". (IV:626-627) At page 31, footnote 23 of the 01-P-1626 decision,

### FURTHER APPELLATE REVIEW SHOULD BE GRANTED TO CLEARIFY SEVERAL STANDARD OF REVIEW QUESTIONS RELATED TO INEFFECTIVE APPELLATE COUNSEL RECORDS

The 01-P-1626 docket entries and decision in-dicate no full record review, and questions remain open as to whether the clerks failure to transmit trial evidence and new trial motion hearing transcripts, <u>ROBERTS V. SUTTON</u>, 217 F.3d. 1337,1338-1341(11th Cir.2000) violated due process by not "en-suring that (the) appellate court (had) a full and accurate un-derstanding" of the unwaived ineffective appellate counsel ground by making "it impossible for a reviewing court to make even a rough assessment of the sufficiency of the evidence with-out some reference to the trial court record", <u>BUNDY V. WILSON</u>, 815 F.2d. 125,132-133(1st Cir.1987).

Similar to the <u>STRICKLAND</u> standard that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury", <u>MELLO V. DIPAULO</u>, 295 F.3d. 137,147(1st Cir.2002) the "substantial likelihood of a miscarriage of justice" standard must equally focus on "the strength of the Commonwealth's case against the defendant", <u>COM-MONWEALTH V. ALPHAS</u>, 430 Mass. 8,13-14(1999) n18/.

In cases challenging an improper closing argument where defense counsel fails to object, even when "the weight of the evidence was heavy", it is seperately considered for "all charges", <u>DARDEN V. WAINWRIGHT</u>, 477 U.S. 168,180-183 n.12, n.14 (1986) "after a careful review of the totality of the record", <u>id</u>, 477 U.S. at 181 n.13; <u>DARDEN V. STATE</u>, 329 So2d 287,290-291 (1976) which is the same as our focus on the actual innocence question of whether "there is a substantial risk of miscarriage

-41-

---

n18/"without consideration of any evidence erroneously admitted", <u>id</u>. Attorney Ferrara's refusal at retrial to show judge Simons the prior exclusion of 8% product rule opinion testimony by judge Murphy [first trial transcript IV:3-6] may support remedial ex-clusion of retrial 8% product rule opinions from miscarriage of justice analysis based on ineffective defense counsel's non-strategic error.

ALOFAR SHOULD BE GRANTED TO REVIEW THE
MERITS OF OUTRAGEOUS CLOSING ARGUMENT
SYNERGISTIC EFFECT ON THE DIRECT APPEAL

Very much like the product rule enhancing in-
ferences of guilt, cumulative error analysis of seperate but re-
lated prosecutorial misconduct omitted from state direct appeal
must be considered together with ineffective appellate counsel
claims to assess the synergistic effect the omitted issue's
would have had on the merits decision of the prior appeal, CAR-
GLE V. MULLIN, 317 F.3d. 1196,1206-1207(10th Cir.2003).

Because outrageous prosecutorial misconduct was
the focus of the direct appeal, COMMONWEALTH V. PERROT, 38 Mass.
App.Ct. 478(1995) there could be no strategic reason for omit-
ting seperate but related closing argument and attorney Seiger's
attached September 4, 1993 letter verifying conflict burdened
C.P.C.S. directions obstructing communications was an "objective
factor external to the defense" which "constituted cause" for
excusing omissions of 1993-1994 letters describing closing argu-
ment issues, MURRAY V. CARRIER, 477 U.S. 478,488(1986).

Where this case involved a 1984-1987 joint police
and prosecution team conspiracy to implicate several suspects in-
volvement in a series of similar burglary rapes at no risk to
officers careers, the outrageous closing argument issue facts
(pages 31-35,Supra) exploiting the motion in limine exclusion of
such evidence was not merely state law reversible error, COMMON-
WEALTH V. HARALDSTAD, 16 Mass.App.Ct. 565,568(1983) but also
constitutional error violating the right to a fundamentally fair
trial, DILOSA V. CAIN, 279 F.3d. 259,265(5th Cir.2002); UNITED
STATE V. UDECHUKWU, 11 F.3d. 1101,1106(1st. Cir.1993).

In addition to improper arguments without evi-
dentiary support, (pages 26-29,Supra) UNITED STATES V. WATSON,
171 F.3d. 695,702(D.C. Cir.1999); UNITED STATES V. BECKMAN, 222
F.3d. 512,527(8th Cir.2000); UNITED STATES V. BLAKEY, 14 F.3d.
1557,1562(11th Cir.1994); COMMONWEALTH V. O'BRIEN, 56 Mass.App.
Ct. 170,173(2002) This case involved credibility vouching for
both the victim and police officers (pages 23-26,Supra), UNITED

-43-

which would have prevailed on federal habeas corpus review, like WASHINGTON and GRAVLEY,Supra, prevailed, had ineffective direct appeal attotney Seiger briefed the issues, or prevailed in the direct appeal had trial attorney Ferrara followed up his objections at sidebar after closing argument, KOZEC,Supra, or objected to the four related improper misstatements of the presumption of innocence.

The Supreme Judicial Court should agree with judge Wernick's finding (pages 22-23,Supra) that the trial judges general jury instructions could not cure any prejudice "without referring to the particular errors in the prosecutor's argument", COMMONWEALTH V. O'BRIEN, 56 Mass.App.Ct. 170,173(2002) while exacerbating prejudice by failing to instruct that the presumption of innocence "remains with the accused throughout every stage of the trial, including, most importantly, the jury deliberations", MAHORNEY V. WALLMAN, 917 F.2d. 469,471n.2-474(10th Cir.1990); COMMONWEALTH V. KANE, 19 Mass.App.Ct. 129,139(1984). Such "duty to instruct properly falls on the trial judge", COMMONWEALTH V. PORTER, 51 Mass. 263,285-286(1845); COMMONWEALTH V. REPOZA, 382 Mass. 119,135n.8(1980) and when improper closing argument occurs "the better practice is for the judge to intervene on his own motion", COMMONWEALTH V. HAWLEY, 380 Mass. 70,85(1980) as part of his "duty", COMMONWEALTH V. AWARD, 47 Mass.App.Ct. 139,142n.1(1999).

The most serious and prejudicial error took place through misdirection covering up the absence of rape evidence (IV:629-630) when the prosecutor "enlisted the jurors on the side of the government", AWARD,Supra, 47 Mass.App.Ct. at 146, following his four misstatements of law concerning the presumption of innocence (IV:615,627,628,629) (pages 19-21,Supra) which had twice the prejudicial impact as those in MAHORNEY, Supra, 917 F.2d. at 471 and quadruple the force of those winning a new trial in PAGANO V. ALLARD, 218 F.Supp.2d. 26,33-37 (D.Mass.2002).

-45-

## CONCLUSION

ALOFAR should be granted with counsel assigned for rebriefing and when this court reviews the merits under a proper anaylsis, if it finds itself "in grave doubt as to the harmlessness of (the) error(s), the (defendant/appellee) must prevail", CALIFORNIA V. ROY, 519 U.S. 2, 5 (1996) as the motion judges decision (page 39) correctly held the outrageous prosecutorial misconduct in this case "leaves the court with a serious doubt that the defendant's guilt was fairly adjudicated",id. In the alternative, ALOFAR should be granted, the judgement of conviction vacated and reimposed to allow timely 28 U.S.C. § 2244, 2254 Federal Habeas Corpus review, or the court should grant a new direct appeal, PISA V. COMMONWEALTH, 378 Mass. 724, 730 (1979); BARCLAY V. WAINWRIGHT, 444 So.2d. 956, 958-959 (Florida 1984); MATHIS V. HOOD, 937 F.2d. 790, 795-796 (2nd Cir. 1991); WHITING V. BURT, 2003 U.S. Dist. Lexis 9560 at page 17 (ED. Mich. 6/10/03).

Respectfully Submitted

December   , 2003

_____

George Perrot, pro se

copy served on

P.O. Box 100

ADA Jane Montori

So. Walpole, Ma. 02071

50 State Street

Springfield, Ma. 01103

## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

SUPERIOR COURT
CRIMINAL ACTION
NOS. 85-5415-18 and
85-5420-25

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**

SEP 1 1 2001

*Marie A. Mazza*
CLERK-MAGISTRATE
*N. 9/10/01*

COMMONWEALTH

vs.

GEORGE PERROT

## MEMORANDUM OF DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR A NEW TRIAL

On January 9, 1992, the defendant, George Perrot ("Perrot"), was convicted of armed

robbery, aggravated rape, burglary and assault in a dwelling, burglary, and indecent assault and

battery. The charges stemmed from two housebreaks that occurred in Springfield,

Massachusetts, on November 30, 1985. Perrot was first convicted of these offenses on December

14, 1987. Those convictions were reversed by Commonwealth v. Perrot, 407 Mass. 539 (1990).[1]

Following his convictions at a second trial, the defendant, represented by new counsel, not trial

counsel, again appealed, raising as the principal issues the denial of his pretrial motion to dismiss

the indictments due to prosecutorial misconduct and the exclusion of evidence of alleged

misconduct by the police and prosecutor. See Commonwealth v. Perrot, 38 Mass. App. Ct. 478,

479 (1995), review denied by Commonwealth v. Perrot, 420 Mass. 1104 (1995). The

convictions were affirmed. Id. at 482.

Perrot, represented by yet another attorney, now moves for a new trial, asserting

numerous trial errors, including that the prosecutor's closing argument was improper and

---

[1] The Supreme Judicial Court reversed the defendant's first convictions because the trial
judge admitted a pocketbook into evidence, which the police acquired as a result of a statement
taken from Perrot in violation of the defendant's right to counsel. Perrot, 407 Mass. at 544-548.

the intruder's head with the stick, he assaulted her, pulled her into her bedroom, and raped her on the bedroom floor. Id. at 135-138.

She later described the man to the police as being of average height and weight, clean shaven, with black wavy hair, and wearing a blue jacket, dark pants, and white sneakers. Id. at 153-156, 172. A week after the incident, she was unable to identify her assailant out of a line-up of men that included the defendant. Id. at 147, 158-161. The defendant had facial hair at the time of the lineup. Tr. II at 396; Tr. III at 540. See also Trial Exhibit 19. By inference and by uncontroverted direct evidence, he had this facial hair on November 30, 1985, as well. Tr. III at 540. Ms. Prekop was unable to identify a picture of the defendant as her assailant at trial and testified that her assailant did not have any beard or mustache. Id. at 158. She was also unable to identify the Defendant as her assailant at trial. Id. at 160.

Ms. Prekop received treatment at the hospital and returned home about three hours later. At that time she found knit gloves in her bedroom that did not belong to her. Tr. I at 144. When presented with a written statement made by her to the police, referring inter alia to the gloves, Ms. Prekop testified that she did not mention gloves when she originally gave her statement to the police and suggested that the police had altered her statement by adding a reference to the gloves after she signed the statement. Id. Ms. Prekop also testified that she found no fresh blood on herself or on the bed after the incident and that nothing took place on the bed. Id. at 163-164. She testified that the only blood stain on the sheet was a 14 to 15 year old stain deposited there by her uncle, who had a respiratory ailment. Id. This stain was still visible on November 30, 1985 despite repeated washing. Id.

Lieutenant Thomas Kelly ("Kelly") was called to Ms. Prekop's residence on the night of

3

bureau. Tr. II at 235. On April 1, 1987, Kennedy and Assistant District Attorney Francis Bloom ("Bloom") took the vials to the FBI laboratory in Washington, D.C. Id. Although Kennedy was unable to recall whether he or Bloom signed any documents at the laboratory, he testified that the vials remained in his possession until they were received at the laboratory. Id. at 235-236.

The Commonwealth's blood expert, William Eubanks ("Eubanks"), an FBI agent, was able to extract blood samples from the bedsheet and from the gloves. Id. at 290-292, 284-285. Because there was insufficient blood to test for blood type on the gloves, Eubanks tested for genetic markers. Id. at 286-287. He was able to conduct only one such test and determined that the enzyme type on both gloves was PGM +1. Id. at 287. The blood stain on the sheet yielded four markers, PGM +1, EAP BA, HP 2-1, and TfC of a possible thirteen that he tested for; he testified that approximately eight percent of the population would have the combination of those four markers, based on the product rule. Id. at 292-294, 301. While the victim was excluded as the donor, the defendant could not be excluded as the donor of the blood found on the bedsheet and the gloves. Id. at 300. Eubanks acknowledged on cross examination that a fresh blood stain the size of a half dollar should permit running of tests for all thirteen genetic markers. Id. at 308.

Wayne Oakes ("Oakes"), another FBI agent, testified as the Commonwealth's hair expert. He was able to find only one human hair suitable for comparison with known samples. Id. at 352. Oakes compared that hair to the defendant's known hair sample and found it to be consistent with having come from the defendant, exhibiting "all the same microscopic hair arranged in the same way as the characteristics present in the known hair from [the defendant]." Id. at 353. The victim's hair, on the other hand, was dissimilar. Id. Oakes admitted that hair comparison, unlike fingerprint analysis, does not constitute a basis for positive identification of

5

ins. Id. at 22. During the interrogation, Bloom accused Timmerman of taking part in both the

Marchand case and the Prekop case. Id. at 25. Neither the prosecutor nor Attorney Rideout

developed at the hearing who "they" were or whether the police were aware of, or involved in,

the questioning of Adkins or Timmerman.[4]

Kelly, at the time a sergeant in the Springfield Police Department, testified that he noticed

the confession and brought it to the attention of the District Attorney's office after an assistant

district attorney gave him the original copy of the confession for filing purposes. Id. at 33-35.

Kelly testified that he contacted Bloom with regard to the confession as follows:

A.    I called him and told him what I had in my hands. In my hands was that three
      page confession. And I asked him what he knew about it. . . he remembered
      making that up and using my name because I was prominently involved in the
      case.
Q.    So he told you he had in fact wrote the three page report. He in fact created this
      three page document?
A.    Yes.
Q.    You know who actually typed it?
A.    No.
Q.    You don't know who exactly made up the words on it.
A.    No.
Q.    Attorney Bloom told you it was him responsible for the document?
A.    Yes.
Q.    It was Attorney Bloom who signed your name to it as a witness?
A.    No. He didn't say that.

---

[4] Defense counsel at one point asked Adkins whether Bloom had called him names. to
which the Timmerman answered in the affirmative. Counsel then asked

Q.    This was by Francis Bloom?
A.    Yes.
Q.    Not by one of the policeman?
A.    No.

MTD at 19-20. This testimony did not address whether the police had been involved in other
facets of the interrogation. as it only answered the precise question of whether Bloom had called
him any names.

7

had been traced, but that he had not done so. Id. at 56. He further testified that by the time he arrived at the police station, the questioning of Adkins and Timmerman "was pretty much over . . . but [he] did talk to them." Id. at 59-60. The remainder of Bloom's testimony was equivocal as to whether he showed Adkins and Timmerman the confession and as to what he stated to them.

At the hearing on the motion to dismiss, the Commonwealth argued that the defendant could not show prejudice or demonstrate that Bloom "did anything that had to do with the Prekop case." Id. at 71. The defendant argued at the hearing that Bloom's heavy involvement in the Prekop case prejudiced the defendant and that Kelly's testimony revealed his notion that subterfuge was an acceptable police tactic. Id. at 71-72. In his memorandum in support of the motion to dismiss, however, the defendant focused primarily on Bloom's conduct and requested that the case be dismissed for prosecutorial misconduct. See Def. App. Br. at R.60.[6]

In denying the motion to dismiss, Judge Moriarty found that Bloom's tactics, although improper, did not prejudice the defendant, because the confession "was not intended to be and never was used against [the defendant] at trial, and it did not succeed in uncovering or inducing any evidence or testimony that could be used against him." Memorandum and Order [on the defendant's motion to dismiss for prosecutorial misconduct] (Moriarty, J.) at 4-5. Judge Moriarty never expressly found that the police were or were not involved in the forged confession or in the interrogation of Adkins and Timmerman.

Indeed, those portions of the decision dealing with possible police involvement are vague as to what transpired prior to the interrogations. As to the generation of the confession, Judge

---

[6] Only portions of Attorney Rideout's memorandum supporting the defendant's motion to dismiss were reproduced in the appellate brief provided to the Court.

exclude evidence of the forged confession that Bloom was at least present when evidence was submitted to the FBI. Tr. II at 235, 238.[7] Bloom was undisputedly present at the defendant's booking, Tr. III at 458, and during the interrogation of the defendant, even initiating questioning of the defendant. MTD at 31;Tr. III at 502. Bloom also participated in preparing the defendant's search warrant waivers for hair and blood samples. Tr. III at 504.

The trial judge (Simons, J.) allowed the Commonwealth's motion in limine to exclude "the proposed testimony of a prospective defense witness Francis Bloom, or any other evidence relating to an alleged 'false confession' of the defendant, George Perrot . . . ." MNT, Exhibit 1. Judge Simons ruled that the evidence would have opened up collateral matters outweighing any probative value. See Tr. II at 387. On appeal, the defendant highlighted Bloom's involvement in the case and argued that the judge's ruling deprived him of the opportunity to establish his defense. See Def. App. Br. at 23.

### The Defendant's Second Appeal

After the defendant's convictions were overturned in Commonwealth v. Perrot, 407 Mass. 539 (1990), the defendant was again convicted of armed robbery, aggravated rape, burglary and assault in a dwelling, burglary, and indecent assault and battery. He appealed these convictions arguing that (1) the trial court erred in denying his motion to dismiss for prosecutorial misconduct, (2) the trial court improperly excluded all references to the forged confession, (3) the trial court should have granted his motion for a required finding of not guilty,

---

[7] Although Officer Thomas Kennedy testified that Bloom had only accompanied him to the FBI laboratory, Tr. II at 235, the FBI agent who examined the blood samples testified that his report indicated that "the blood samples were personally delivered by Mr. Francis Bloom . . . ." Id. at 308.

colleague's competence. Id. In his affidavit, the defendant states that both trial counsel and appellate counsel were "employed" by CPCS.

The record demonstrates to the contrary. The trial judge introduced defense counsel as "Attorney John Ferrara . . . with the offices of Dalsey & Ferrara here in Springfield," Tr. I at 23, 70, and the docket sheets suggest that Attorney Ferrara was appointed by the court, not employed by CPCS.[8] Accordingly, the defendant has not supported his claim that trial counsel was employed by CPCS. Even if the defendant's trial counsel was "appointed" by CPCS, as argued in the defendant's brief, the defendant's scenario was dissimilar to that contemplated by the Court in Egardo, that is, where two attorneys are working as associates for the CPCS offices. Were the case otherwise, indigent defendants would rarely be subjected to waiver principles for ineffective assistance claims in their appeal, so long as bar advocates are appointed for them by CPCS. Those issues not raised on appeal are thus waived, including ineffective assistance of trial counsel.[9]

Since all of the issues raised in the defendant's motion for a new trial, except his claim of ineffective assistance of appellate counsel, were raised and resolved on appeal or could have been raised on direct appeal, they were either resolved or waived. The defendant's claim that appellate counsel provided ineffective assistance obviously could not have included in his direct

---

[8] See Docket entry for September 18, 1991, allowing Attorney Rideout's motion to disappear and appointing Attorney Ferrara ("Court Appt's Atty. J. Ferrara").

[9] As will be discussed infra, a claim of ineffective assistance of trial counsel, even if not waived, adds nothing to the Defendant's motion; because, when the basis for such claim of ineffective assistance is errors waived or unpreserved by trial counsel, as in this case, a showing of a substantial risk of miscarriage of justice is required for such a claim of ineffective assistance of counsel to succeed.

Richardson, 38 Mass. App. Ct. 384, 392 (1995) (finding that an objection did not preserve the issue where the trial judge suggested that defense counsel wait until the jury charge was complete), reversed on other grounds by Commonwealth v. Richardson, 423 Mass. 180 (1996).

The defendant argues that appellate counsel was nonetheless ineffective in failing to argue that these errors created a substantial risk of a miscarriage of justice or to argue that trial counsel was ineffective in failing to preserve the issues for appeal. When dealing with waived errors, however, the standard for review is essentially the same for ineffective assistance claims as it is for a substantial risk of a miscarriage of justice. See Commonwealth v. Sholley, 432 Mass. 721, 732 n. 13 (2000); Commonwealth v. Curtis, 417 Mass. 619, 624-625 n.4 (1994). "Thus, if there is no risk of a substantial risk of a miscarriage of justice, the defendant cannot claim ineffective assistance of counsel." Commonwealth v. Foster, 48 Mass. App. Ct. 671, 677 (2000). If the unpreserved errors created a substantial risk of miscarriage of justice, a new trial would be required in any event. If they did not, then trial counsel's and appellate counsel's alleged ineffectiveness adds nothing. The Court, therefore, will review all the defendant's claims of error to determine whether errors were in fact made, and if so, whether such errors alone, or together, created a substantial risk of a miscarriage of justice.

II. Claims of Error

A.    Prosecutor's References in Closing Argument to the Absence of Evidence which Prosecutor had successfully excluded by Motion In Limine

"It is . . . improper for a prosecutor to call the jury's attention to an absence of evidence when the absence is a result of the prosecutor's objection to the introduction of that evidence." Commonwealth v. Mosby, 11 Mass. App. Ct. 1, 9 (1980). Therefore, "a party's success in

15

"Tom Kelly and Mr. Jarvis get together to create evidence to pin on this poor man. It's the kind of world where for him to be innocent there has to be such a conspiracy you can't believe. . . That's preposterous. Its [sic] preposterous." Id. at 626-627.[10]

The defendant contends that these statements, in addition to improperly vouching for government witnesses (discussed infra), were prosecutorial error given the prosecutor's successful exclusion of any reference to the false confession. The Commonwealth argues that these statements were fair inferences from the evidence, contending that both the motion judge and trial judge found that the police were never involved in forging the confession or creating evidence.

Although Judge Moriarty's decision found that Bloom was responsible for the confession's creation, the memorandum lacks an express finding that the police were not involved, or did not participate in, the forgery of the confession or subsequent interrogations based on it. Nor were such findings necessary to decide a motion to dismiss for prosecutorial misconduct. The issue before Judge Moriarty was whether Bloom's and the police's conduct was so egregious, though nonprejudicial, that the defendant's indictments should have been dismissed. See, e.g., Commonwealth v. Lewin, 405 Mass. 566, 586-587 (1989).

Judge Simons adopted Judge Moriarty's findings and excluded any reference to the confession at trial, finding that on the day he was arrested, the defendant voluntarily made the confessions, that the false confession was generated after the defendant's first conviction and

---

[10] Defense counsel objected to this argument, specifically, after the prosecutor suggested that the agents would be risking their careers and reputations to engage in such conduct, to which the Court responded "[h]old it." Tr. IV at 627, presumably meaning that defense counsel was to wait until after closing to raise this issue. Defense counsel did not raise the matter after the prosecutor's summation.

present at the defendant's interrogation, prepared the defendant's waiver to consent to the taking

of hair and blood samples. and participated in the delivery of evidence to the FBI laboratory. Id.

at 22-23.  The relevance of the evidence relating to the forged confession was thus squarely

before the Appeals Court when it ruled that the motion in limine was properly allowed because

the evidence was irrelevant to the defendant's case.

To the extent the defendant argues that there was relevant evidence tending to prove that

the police do fabricate evidence which was excluded on the Commonwealth's motion. and that

the prosecutor therefore improperly argued that the police would not create evidence in a

criminal case. the Appeals Court's decision forecloses that argument by holding that the forged

confession "did not have even tangential relevance to the evidence on which the Commonwealth

was to rely; it suggested no shortcoming in the police investigation of the defendant's case."

Perrot, 38 Mass. App. Ct. at 482.  The Appeals Court ruling establishes that there was no

evidence that had any tendency to undermine what the prosecutor was arguing.  See, e.g..

Commonwealth v. DeCoste, 51 Mass. App. Ct. 691, 696 (2001) (finding no error in prosecutor's

emphasizing rape victim's lack of motive to fabricate a story despite evidence that the victim

himself had been accused of rape, which was excluded by the prosecutor, as the victim's rape

charge did not provide him with a plausible motive to lie).

Recognizing this problem. the defendant asserted at oral argument that the prosecutor

rendered the evidence relevant when he stated that the police "don't do that," which the

defendant claims suggested to the jury that false confessions are never created by these police

officers in a criminal case.  Tr. IV at 625.  According to the defendant. by arguing these "facts,"

which were not in evidence. the prosecutor opened the door to the previously excluded evidence

19

burden to prove his innocence). Prosecutors do not violate this admonition if they state that

sufficient evidence has been introduced to convince the jury that the presumption is gone. See

Commonwealth v. Degro, 432 Mass. 319, 328 (2000) ("[The] presumption of innocence only

lasts until evidence is presented to you, the jury, that a person is guilty of a crime. And, in this

case, ladies and gentlemen, the Commonwealth has presented evidence that this man is guilty of

first-degree murder"); Commonwealth v. Sheline, 391 Mass. 279, 293-294 n.4 (1984) ("[T]he

presumption of innocence . . . creates for every [d]efendant a cloak, a covering, a protection . . .

unless and until evidence is presented . . . which would convince [the jury] beyond a reasonable

doubt that the presumption . . . is nonexistent").

    At the very outset of his closing, the prosecutor stated that the defendant "stood before

you at the beginning of this trial presumed innocent and no evidence had been introduced. He is

not innocent anymore," Tr. IV at 615, and at the very end of his argument he again stated that

"[the defendant] was presumed innocent. He is not any longer." Tr. IV at 629. Defense counsel

did not object to these statements.

    Giving the prosecutor the benefit of the doubt, he may have intended to structure his

argument to acknowledge the presumption of innocence at the outset of his argument as well as

his burden of proof, then to state that he had met his burden, showing why, and then to close with

a statement that the presumption was gone because he had met his burden of proof. He did not,

however, state it this way, either at the beginning or at the end of his closing. Instead, he omitted

any language advising the jurors that the defendant has the benefit of the presumption of

innocence throughout the case and that it may only be overcome by proof beyond a reasonable

doubt of his guilt.

85 (1980).

Instead, the judge's general instruction, although accurately stating the burden of proof,

misstated the effect of the presumption of innocence very much as the prosecutor had, by

suggesting that the defendant has the benefit of the presumption of innocence only at the

beginning of trial and that the presumption meant that no adverse inference could be drawn from

the fact that the defendant had been indicted or arrested, with no indication that the presumption

lasted throughout the case unless and until the Commonwealth has proven the defendant guilty

beyond a reasonable doubt. These instructions compounded the misleading and confusing effect

on the jury of the prosecutor's statement that the defendant was no longer presumed innocent.

The judge, furthermore, never told the jury that the lawyers' statements regarding the law were to

be disregarded to the extent they differed from the judge's instructions.

Additional remarks during the prosecutor's closing compounded the error further by

repeatedly and more subtly misstating the Commonwealth's burden of proof. The prosecutor

stated that to believe in a "world . . . where [the defendant] is innocent," the jurors would have to

believe in a world where law enforcement officials "risk their reputations and careers to create

evidence to reach conclusions not supported." Tr. IV at 626. Trial counsel objected to this

statement, but the trial judge directed him to "[h]old it" until the prosecutor's summation. The

prosecutor then continued to expound on the kind of "world" the jurors would have to "believe

in" for the defendant to be innocent:

> "It's a kind of world where Tom Kelly and Mr. Jarvis get together to create evidence to
> pin on this poor man. It's the kind of world where for him to be innocent there has to be
> such a conspiracy you can't believe. They may have to take the blood and shake it on
> the– let's get a little on the gloves. Pull out one of George's hair [sic]. Though, it's in
> the heat of a rape. And the FBI finds that single hair. That's preposterous. Its [sic]

23

of a miscarriage of justice in light of the entire argument and the judge's detailed instruction);

Reed, 724 F.2d at 681; United States v. Vargas, 583 F.2d 380, 386-387 (7th Cir. 1978) (a

prosecutor's equating of an acquittal with a finding that government agents were lying excludes

the possibility that the jury may "return a verdict of not guilty because the evidence might not be

sufficient to convict the defendant beyond a reasonable doubt").

The prosecutor's statements, individually and collectively, particularly when combined

with the prosecutor's direct mischaracterizations of the presumption of innocence, improperly

suggested to the jurors that the defendant could not be acquitted unless they were persuaded that

the police and agents were lying and that someone else committed these crimes. The jurors did

not have to be so persuaded in order to acquit Perrot. In a case such as this, a jury could have

found that the Commonwealth failed to meet its burden of proof for any of a number of reasons.

The victim all but testified that the defendant was not her attacker. The defendant contested both

the fact and the voluntariness of his confession, and there was evidence to support such a

challenge. Finally, there were substantial issues as to how the gloves got into the bedroom and

onto the bed, and whether the defendant's blood could have gotten onto the bed and, if so, how

(the attack was on the floor). The prosecutor's repetitive and pervasive misstatements of the law

were potentially exacerbated, instead of corrected, by the judge's instructions regarding the

presumption of innocence. Moreover, the same statements impermissibly vouched for the

credibility of the Commonwealth's witnesses.

C. Vouching for Government Witnesses

A prosecutor should avoid statements suggesting that to believe the defendant's version

of events, jurors must find that government agents are lying or otherwise "explicitly or implicitly

25

"crossed permissible limits or were particularly significant." Id.[14] In doing so, the Court noted that among the three defendants' closings, one attorney suggested that a police officer's testimony was "implausibly pat." Id. at 227.

Here, the prosecutor not only suggested that the defendant wanted the jurors to believe that the police and agents were lying, but told the jurors that to believe in a "world . . . where [the defendant] is innocent," they would have to believe in a world where law enforcement officials "risk their reputations and careers to create evidence."

The Commonwealth claims that this argument was merely responsive to the defendant's own "combative" closing, citing no portions of the closing to support this argument. The defendant's closing did suggest untoward behavior in that the agents had not signed their reports, were biased, and were collaborating in subjective scientific analyses. Tr. IV at 603-604. In addition, counsel suggested that Agent Oakes' testimony was somewhat contrived in that he did not have his notes and was merely testifying to characteristics he could recite in any case. Tr. IV at 605-607. As to the police, defense counsel argued inconsistencies in their testimony and suggested that the defendant had not voluntarily confessed to the Prekop break-in, and argued that to the extent the defendant confessed, it was limited to the break-in at the McNabb residence on December 7, 1985, and the purse snatching. Tr. IV at 589-590. Moreover, the defendant produced evidence at trial suggesting that the defendant had been beaten by the police. Tr. III at 541. He also pointed to inconsistencies in the officers' testimony as to whether the defendant's sister actually stated that she owned the gloves found at the crime scene, and argued that the

---

[14] Brown did not address what effect, if any, such a statement could have on the government's burden of proving guilt beyond a reasonable doubt.

D. <u>Reference to Evidence Not in the Record</u>

"[A] prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence." <u>Commonwealth</u> v. <u>Kelly</u>, 417 Mass. 266, 270 (1994). In <u>Kelly</u>, in a case where defense counsel attacked the credibility of government witnesses, the Court found error in the prosecutor's statement that the defense had suggested a "conspiracy" whereby the officers "put their pensions . . . on the line to get these two guys. . . . [The officer] hashed up a conspiracy, put his pension on the line to get these two guys." <u>Id</u>. at 269-270.

In suggesting that the agents did not create evidence against the defendant, the prosecutor stated that for the defendant to be innocent, the jurors would have to believe they would "risk their reputations and careers to create evidence to reach conclusions not supported." In addition to misstating the Commonwealth's burden and vouching for government witnesses, this statement invited an inference wholly unsupported by the record, because there was no evidence that the agents' careers would have been at risk had they created evidence or given false or incorrect testimony at trial. See <u>Kelly</u>, 417 Mass. at 270. See also <u>United States</u> v. <u>Boyd</u>, 54 F.3d 868, 871 (D.C. Cir. 1995) (finding a prosecutor's statements were clearly improper where he suggested in closing that officers would not lie on the stand and thereby jeopardize their careers and risk criminal prosecution); <u>United States</u> v. <u>Martinez</u>, 981 F.2d 867, 871 (6th Cir. 1992) (finding "prosecutorial impropriety" in argument that police witness, if lying, would risk 18-year career, without evidence suggesting as much).

In addition, the prosecutor suggested that Officer Jarvis, in interrogating suspects, "has a

also referred to excluded evidence of the defendant's involvement in other crimes, despite having objected to defense counsel's improper reference to excluded evidence during the defendant's closing.

### E. Reference to Excluded Evidence

The Commonwealth is entitled to make a retaliatory reply to comments by the defense in closing. See Commonwealth v. LeFave, 407 Mass. 927, 939 (1990). The reply is limited, however, to correcting an erroneous impression created by opposing counsel. See Commonwealth v. Kozec. 399 Mass. 514, 519 n.9 (1987) ("The Commonwealth's right to 'fight fire with fire' is aimed at answering 'prejudicial irrelevancy argued by opposing counsel,' . . . , it is limited to 'correct[ing] the erroneous impression for which the defendant himself was responsible. . . . It is not a license to indulge in improper argument") (citations and quotations omitted); Burke, 373 Mass. at 575 ("No attorney shall refer in closing argument to evidence which had been excluded. nor may he or she invite an inference from the exercise of a party's right to have evidence excluded").

Any evidence regarding the defendant's involvement in prior sexual assaults and house breaks was excluded. Tr. IV at 596. In closing, defense counsel suggested that at the time they obtained the defendant's waiver for blood and hair samples, the police did not have sufficient information to obtain a warrant to do so. Id. The prosecutor objected and the judge sustained the objection. Id. The prosecutor requested to be heard. after which the judge admonished defense counsel to go no further into that area, given the exclusion of such evidence. Id. at 597. Then,

---

activity dangerously approaches the boundaries. as the defendant's character was not an issue and the defendant did not testify.

objection moments before, during the defendant's closing, an objection that was sustained by the court.

### F. Enlistment of the Jurors on the Side of the Government

The defendant also argues that the prosecutor expressed his personal opinion of the defendant's guilt and attempted to make himself into a thirteenth juror by telling the jury that they should "render the truth so that we may confront [the defendant] with what he could not confront himself with, that he is guilty of these crimes." Tr. IV at 630. The prosecutor's use of the word "we" placed him and the jury on the same footing and constituted "[a]n appeal that enlist[ed] the jurors on the side of the government." Awad, 47 Mass. App. Ct. at 146. While this isolated statement alone would not warrant a new trial, it represented yet another excess in the prosecutor's cumulatively prejudicial closing.[17]

---

[17] In addition to the claims discussed above, the defendant argues that appellate counsel was also ineffective in failing to raise the following issues, or in failing to claim that trial counsel had been ineffective in failing to raise them. Since the court concludes that the issues are without merit, there is no error. See, e.g., Breese v. Commonwealth, 415 Mass. 249, 252 (1993) ("If the defendant received effective assistance of counsel at trial, there can be no argument that either first or second appellate counsel was ineffective for failing to argue that trial counsel was ineffective").

Evidence that may indicate that one other than the defendant committed the crimes charged is exculpatory within the meaning of Brady v. Maryland, 373 U.S. 83 (1963). The defendant points to (1) a reference in testimony to a palm print or fingerprints in a report by Officer Cheetham of the Springfield police that stated that the police were unable to match the print with anyone and (2) blood testing conducted in a related matter; the defendant argues that the Commonwealth failed to disclose exculpatory evidence and that it was ineffective assistance for trial and appellate counsel to raise these issues.

The trial testimony did not reveal that evidence regarding the palm print was exculpatory, nor has the defendant offered evidence on this motion to suggest as much. In fact, the only evidence regarding the palm print (Kelly's testimony) suggested that the print was unusable for purposes of identifying any individual.

With respect to the blood test results that exculpated the defendant in the Marchand case, mentioned at the hearing on the motion to dismiss for prosecutorial misconduct, the defendant was notified of the blood testing as early as the time of the motion to dismiss. Other than

ineffective assistance of counsel or where allowing the conviction to stand 'will result in manifest injustice,'" any issue that could have been raised earlier, and was not, is considered waived, and "may not be raised for the first time on collateral review." Id., quoting Commonwealth v. Watson, 409 Mass. 110, 114 (1991). "The power to give relief when a waived issues 'raised for the first time by [post-conviction] motion for a new trial, should be exercised only in these extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.' Commonwealth v. Curtis, 417 Mass. 619, 626, 632 N.E.2d 8 21 (1994), quoting Commonwealth v. Harrington, 379 Mass. 446, 449, 399 N.E.2d 475 (1980)." Commonwealth v. LeFave, 430 Mass. 169, 173 (1999).

An error creates a substantial risk of a miscarriage of justice unless the Court is persuaded that it did not "materially influence[]" the guilty verdict. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967). The "traditional treatment of the substantial risk issue calls for us to decide if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. LeFave, supra at 174. In determining whether an error materially influenced the verdict, the Court considers "the strength of the Commonwealth's case..., the nature of the error, whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error. . . and whether it can be inferred 'from the record that counsel's failure to object was not simply a reasonable tactical decision.'" Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (footnote and citation omitted), quoting Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 21 (1986). See Commonwealth v. Azar, 50 Mass. App. Ct. 767, 771 (2001).

Although the Commonwealth's case was strong, based on evidence of a confession



one on the floor differed from earlier testimony in which he said both gloves were on the floor. Furthermore, there was admittedly a blood stain on the sheet from Prekop's uncle (allegedly too old to test positive for genetic markers). That only four of thirteen genetic markers could be positively identified from the supposedly fresh stain on the bed, tested by the FBI, raises a question of how fresh it really was and whether the "fresh" stain was actually the old stain.

There were also substantial issues regarding whether the Defendant actually gave a written confession to the break-in (he never confessed to any assault on Prekop), and, if so, whether it was voluntary. There was evidence that the Defendant had ingested drugs and alcohol shortly before his arrest. Tr. III at 509; that he was either not permitted to sleep or unable to sleep during the many, many hours of questioning. Tr. III at 436, 501, 507-509, 512, and that he was interrogated intermittently during a period of at least 12 hours commencing as early as 5:05 a.m. His sister, furthermore, testified that she saw bruises on his face and chest at the police station.

As to the nature of the errors, the prosecutor's arguments were not simply isolated incidents of hyperbole in an otherwise acceptable closing, but were persistent, repetitive, and pervasive departures from acceptable argument. See Griffith, 45 Mass. App. Ct. at 788 ("excess in the instant case was a repetitive characteristic of the closing argument"). The prosecutor's remarks regarding the presumption of innocence and vouching for government witnesses were not collateral issues, but went to the heart of the defense, since the defendant did not testify and instead attacked the strength of the Commonwealth's evidence, which came primarily from police officers and FBI agents. His defense, therefore, depended largely upon attacking the credibility of those officers and agents and holding the Commonwealth to its high burden of proof. The Prosecutor's repeated mischaracterizations of the presumption of innocence and

37

The Court is mindful of the fact "that the prosecutor has a duty 'to argue the public's case aggressively and resourcefully.'" Commonwealth v. Shelley, 374 Mass. 466, 472 (1978). The prosecuting attorney, however, "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore. in a criminal prosecution is not that it shall win a case, but that justice shall be done." Id., quoting Berger v. United States, 295 U.S. 78, 88 (1935).

The Court is unpersuaded that the prosecutor's pervasive and persistent improper comments in closing did not materially influence the guilty verdict in this case. The cumulative effect of the errors in the prosecutor's closing. coupled with an absence of any curative instruction, and. indeed. magnified by the judge's misleading instruction on the presumption of innocence leaves the court with a serious doubt that the Defendant's guilt was fairly adjudicated.

## ORDER

For the foregoing reasons. it is hereby **ORDERED** that the defendant's motion for a new trial be **ALLOWED**.

Lawrence B. Wernick
Justice of the Superior Court

DATE: September 10 , 2001

WORK PRODUCT PRIVILEGED
Agent of Client My Counsel

JANUARY 31, 1993
(ASAP. Con to your partner Nate Bruyette
LATER copy to counsel of Record)

Hi George;

Your file is going to Mike B. with this to Hell IN CASE the FIRST CIRCUIT is Late with my P.I. (Special #93-2119 First circuit Leave to File original injunction on D.O.U. Dupont V. DuBois) overdue decision AND I'm queseed AGAIN AND Lugged IN the near future.

I'll need AND like to ask for, AN affidavit from you or your Lawyer, on GPCS, telling your attorney to withdraw from the case if you pressed my backup, with as close to the exact wording as possible for MARVIN'S Rule 30 Judge Patrick Brady is considering, in the pattern of CPCS misconduct Failure to TRAIN AND supervise; MARVIN'S ineffective assistance of DIRECT Appeal counsel Dave Cege, Not RAISING federal backup claim, no FAR, Not exhausting state remedies for client) on the merits Right now And its lawyer clipping him same way 2 weeks ago. JR finally gave me the Green light AND my 34 page rehearing petition was just Filed LAST week a copy of which, with this letter, I'd like to send to your Atty. Kenneth Seiger LATER so he knows just what He's Facing if he continue to go with GPCS, state agency scum.

Any way, here's my objective critique on his briefs.

Your G.P.C.S. inadequately trained appellate counsel, by Failing to cite federal decisions n.1 and a backup federal constitutional argument, procedurally barred and/or Left you unexhausted GAGNE V FAIR, 835 F2d 6, 7-9 (1st cir 1987) MARTINS V. SHANNON, 836 F2d 715, 717 (1st cir 1988) (And as cited about your issue II Caution in Lining) might win even on weak state claim grounds n.2 (.

If     ⟶     (see other side)

n.1 & the citation to Com. V. Safarian on ineffectiveness might get by BRADY V PONTE 705 F.Supp. 2, 855 (D. MASS 1988) but its an unnecessary risk. n.2 X Exclusion of evidence on involuntariness would be per se Reversible error under CRANE V. KENTUCKY 476 U.S. 683 (1986) particularly where voluntariness of statements from a prior guilty plea may Always be reLitigated Delvechio V Dcc, 8F3d 509, 510-519 (7th cir 1993)

continued over ⟶

TR. III: 512, 521-522 cop JARVIS destroyed his handwritten notes, which is grounds for, or mandates dismissal, under COMMONWEALTH V HENDERSON 411 MASS 309 (1991), which your Trial counsel must be Hit for ineffectiveness on for NOT moving to dismiss, or if within ambit of Bloom Dismissal, your Appellate counsel forgot to cite in his PRIMARY brief

IV: Prosecutor introduces Dec. 14th Lineup identification of George, TR. II 239, 233, other crimes prior bad acts COMMONWEALTH V BROWN, 389 MASS 382 (1983) And a wealth of federal caselaw, Issue trial counsel was ineffective for NOT objecting to, which ties into his failure to File written MASS. CRIM. P. Rule 24(b) jury instruction requests, TR. III: 529, And with respect to not getting a COM V Presley/COM V Rodriguez honestly mistaken identification instruction, the movin says "I have to plead ignorance to that Rodriguez charge" TR. III: 561 (then missing off the record tape, TR. I asked you to get when Judge Lies at no ID evidence, or RECONSTRUCT. MASS. R.APP. Rule 8(C) CPCS STANDARD #6 Appellate counsel duty to RECONSTRUCT) And trial counsel sells you out on TR. II: 239, 233 disputed other crime ID. by saying "I agree with you (Judge) that charge would NOT be necessary" TR. III: 562-563, DANIEL V THIGPEN 742 F.Supp 1535, 1560 (M.D.ALA. 1990) (Failure to object to one instruction and total failure to present applicable jury charge requests, ineffective COMMONWEALTH V KANE, 19 MASS. APP. ct. 129, 142 (1984); ABADWOOD V CLUSEN, 732 F.2d 1364, 1371-1372 (10th cir. 1984); GORSKI V ANDERSON, 443 F.Supp 176, 178 (E.D. mich. 1977). In relation thereto to footnote 2 supra, stuff applies equally to Failure to give INTOXICATION instruction, id. Yal houni, supra, COMMONWEALTH V SAMIA    MASS    (1992) (extending COM V GREY 399 MASS    (1987) COM V HENSON,    MASS    (1985) to general knowledge (intent) (see denial of INTOXICATION instruction on some charges in your docket entries) Why wasn't INTOX raised in direct appeal?

—3 of —    continued other side →

Therefore, under the Federal Rule that A STATE COURT CAN NEVER exclude evidence bearing on involuntariness CRANE V. KENTUCKY, 476 U.S. 683 (1986) Blooms identical coercion or attempted coercion of Atkins and Zimmerman, was relevant to prove his coercion of you, plus corroborate your position on suppression, Finally, since page 48 of the Dismissal Hearing Tr. has Bloom testifying he didn't know who typed and created the wording on the Forged Statement was Relevant negative evidence that someone else in the joint investigation did it thereby requiring a Com V Bowden instruction, see Com V Koulouris, supra.

VIII: For the reasons set out in VII, Trial counsel was ineffective for not moving to Reopen the motion to suppress, KIMMELMAN V. MORRISON, 106 S.Ct. 2574 (1986), and for his closing defense ARgument misstating inverting burden of proof Tr. IV: 613-614

IX: Defense counsel was ineffective for focusing on in-custody silence in opening argument TR.V: 116, and D.A. may move himself A comment on silence also, Tr. V: 108, And trial counsel was also ineffective for cunning cross-examination of Emily Lichwala CV Tr.V: 126, After she testifies purse, credit cards, license, cash, keys, eyeglasses, makeup was stolen (V: 119-126) but there is no inventory nor followup, Com V Bowden which goes to odd confession ROM saying George left it a few houses down the street, but does not say what was in it, Id. cross-examination would bring out what kind of credit cards, + what did company say on use? How much cash? would wipe non victim, etc., or show confession was false, or show failure to investigate.

X: In Relation to II, VII, supra, the Judge sets you up by not giving a Webster, and instead, focuses on "Truth" as proof beyond A Reasonable doubt, 3 Times Tr. IV: 639-640, After prosecutor's argument links voluntariness to truth IV: 620-621 and makes CRUZ V New York, 481 U.S. 186 (1987) Prejudicial corroboration from both Statements, Tr. IV: 622-628

—5 of 6— (objections) continue other side→

### KENNETH I. SEIGER
ATTORNEY AT LAW
1145 MAIN STREET
SUITE 403
SPRINGFIELD, MASSACHUSETTS 01103

(413) 747-1622

CONFIDENTIAL

September 4, 1993

George Perrot
MCI-Norfolk
P.O. Box 43
Norfolk, MA 02056

Dear George:

I received your last letter yesterday with a certain degree of disappointment. In your letter, you requested that I work with Mike Dupont on the appeal, and you requested that I send him some materials. You also indicated that you had given him my address so that he can send correspondence to me.

George, this is exactly what I said I would **not** do when we had our interview on July 14. I told you that if you wanted to receive advice from Mike Dupont on your appeal, I would not stand in your way. I made it clear that if he suggested issues to you, that I would be happy to listen to them and take them under advisement. But I also made it very clear that I would not be working with him directly.

I will not correspond with Mike Dupont, nor will I take his phone calls. I have also been instructed by CPCS not to communicate with him. I can see from his letter, which you enclosed for me, that he is off the wall. The tone and language of the letter, in which he constantly refers to your "appointed potatoe head vegetable thought process trial counsel" makes this clear to me. Also, most of his suggestions are pure nonsense. Mike Dupont obviously has an axe to grind and I am not going to allow myself, for professional reasons, to be swept along with his nonsense.

It was against my better judgment to send another transcript for Dupont to read, because I believed his influence would only foul up our attorney-client relationship. But I did not feel I could refuse because you were my client and you wanted his input so badly.

At this point, if you would like to fire me, and represent yourself with Mike Dupont's help, that is fine with me. In that event, I would return anything from your files that you wish.

August 27, 1993

(EXTRA copy enclosed for your Lawyer)

Hi George:

I JUST STARTED AND will MAIL A FIRST READ outline of my notes NEXT week n. 1/.

FIRST of All, please Tell your appellate counsel to obtain the tape of omission from charge conference at Tr. III: 562, And All other omissions, or to get a verbatim affidavit of what was said to supplement the appellate record pursuant to Mass. App. P. Rule 8(c) OR 8(e), IF they can prove tape destruction.

Second, SIMMONS HIT you FOR sure, And your appointed POTATOE HEAD (e.g. vegetable carbohydrate thought process) G.P.C.S. TRIAL counsel helped that Judge. You were entitled to a Com V Pressley "Honestly mistaken identification" instruction qualification of Rodriguez, And the POTATOE HEAD didn't even Know what the Rodriguez case was!!! The other I.D. witnesses + general I.D. description, And even the scientific tests, fell squarely within the Pressley "Honestly Mistaken" supplement And I gave you Mike Pressley For that purpose PRIOR to your TRIAL. You were sold out by not using the Bloom Misconduct Police set up defense Also!

—1 of 4 — continued other side →

(Sapell!) (Tr. III: 233) McNaught

n. 1/ Give Jr. my best. Tell Him I need an update on his incompetent private List CPCS DIRECT appeal counsel (e.g. what happened AFTER I started the HIT) And what the Response was to my pointing out the defective brief portions And failure to put All Transcripts (I was missing on motions), And exhibits on irregular impanelment in the record?

SCHOOL ON EDGEFIELD RD. DOCUMENT 1
M. DDIE BORO

IN SERIOUS CASES, TROEDEL V WAINWRIGHT, 667 F.Supp 1456
(S.D. FLA, 1986) GRANT OF WRIT AFF'd, 828 F2d 670 CINTH
CIR, 1987) To obTAIN STATE CONVICTIONS ON FAlse
expert TESTIMONY, id. If the Blood + HAIR WAS lost, NO Testimony shall HAVE BEEN admitted.

FOURTH, Although there ARE A LOT OF
ISSUES (set out IN my FIRST READ oilTINE NEXT week's
MAIL), you Should WIN on the exclusion Of your
BOWDEN — type FAlse police misconduct—set up defense
TR II: 388, 388 but I wish more evidence of police
FAILURE To properly INVESTIGATE/TEST WAS presented,
SoThAT will need RULE 30 boosting with the NECESSARY
INeffective ASSISTANCE Angle. AN AuGuST 5, 1993 LIACOS
S.J.C. decision footnote in CAIN V MARTINEZ makes the
RElATed pattern of misconducT IN other CASES relevant
AND MATERIAL 😊 !

FIFTH, WHERE WAS youR defense
INTOXICATION expert? Recently use of drugs that CAN
CAUSE HALLUCINATIONS specifically negated INTENT IN A
House INVASION SEx case _____ V _____
C (1993) (Not Guilty + INSURANCE company LIABLE for rape victim INJURIES)

Sixth, Why wasN'T AN INTOXICATION
INSTRUCTION requested OR given, OR the Absence
OF AN INTOXICATION INSTRUCTION objected To? OR
A COM V SAMA type INSTRUCTion on gun-Suicide Attempt.
WHERE WAS the defense expert psychologist?

Seventh, you need THE TAPE of THE TR.
III: 530 OMISSION, AND the SEALED RECORD your LAWYER
SET up. Your Appellate counsel needs THAT ASAP.

—3 of 4—

eighth, I need a copy of the Judges rulings on all motions, particularly I'm concerned with how on earth that other crimes evidence was admitted against you in the prosecutors case in chief.

Ninth, you need to withdraw any pleas of guilty on those other crimes and get plea Dr.'s ASAP. No-one could plead you guilty on hallucinatory drugs, etc, or at least your statements were a complete defense!

Tenth you need to tell your new appellate counsel what your trial potato head attorney did or did not do, to prepare you to testify! Did he go over your whole direct testimony? Tell you questions D.A. might ask check your alibi?, tell you most juries always convict when a defendant doesn't testify, and be specific cause your lawyer had absolutely no legal understanding and might have scared you with inadmissible impeachment! Com v Licata — Mass — (1992). the Dr. III's 533 testifying questions were insufficient under Com v Rosado, Mass (1989)

If you have any idea where the hair + blood evidence samples are now, or how they became missing, let me know ASAP. O.K. George.

Latter, your friend Michel

—4 of 4

<u>Third</u>, mail up the entire discovery package; I specifically am looking for the scientific evidence reports, also any of your <u>experts</u> retesting reports on the blood and hair; or if you probably didn't have an expert, any motions/affidavits for defense forensic experts with rulings, and the trial potatoe heads C.P.C.S. application, training (if any) records, + billing records via Leslie Walker, CPCS director of private counsel division resources. You see a neutron activation analysis identifying 20 trace elements in a hair, should have been done by your expert — ALR 4th ___ (Litgetit), and your expert should have testified on the impossibility of positively identifying anyone from a single hair, with microscopic analysis visually, but with N.A.A., its been done for a decade. So <u>why didn't the FBI do a hair</u> N.A.A. trace elemental analysis? Where are the standard blowup photo's of the hair ends in a split screen comparison microscope? (they always do photo's if they are a close match). Why didn't anyone define "consistant" (it only means similar to). Or get the number of consistant brown hairs in that population average? The prosecutor misstates the evidence at Tr. IV: 619 lines 22-23, 620, lines 1-8 then vouches for the hair expert at Tr. IV: 826, without mentioning FBI agents can usually perjure themselves

—2 of 4—

George Perrot--September 4, 1993--page 2

It is also apparent to me now that, considering the progress that we are making, there is no way that I would be able to file a brief by the end of next month. This is especially true because I know you would like to review the brief before it is filed.

You should let me know very quickly what your intentions are regarding my representation of you. You requested a CPSC-appointed lawyer; you got one. If you wish, I will withdraw and return anything from your files that you wish.

Sincerely,

Ken Seiger

This all comes together with the Judges voluntariness jury instruction that links voluntariness to the incorporated by reference Strand V. Herrick-Smith, 396 Mass 783, 786 (1985) (Contrast the voluntariness TR. IV: 652-653 instruction incorporating "truth" beyond a reasonable doubt instruction TR. IV: 629-630, 639-640 instructions) while leaving out beating by police factor in voluntariness, if that was serious, reversible, instructional error for any state court since Rogers V. Richmond, 365 U.S. 534, 543-544 (1961) (and its progeny) held that "reference to a legal standard which took into account the circumstances of probable truth or falsity and this is not a permissible standard under the Due Process Clause of the Fourteenth Amendment" for "confessions "voluntariness, if XI" Also, your strongest preserved trial issue (other than motion in limine) was the prosecutor's improper closing argument that your lawyer correctly objected to speculative argument IV: 620, credibility vouching for police and misstatement of law which derrogated presumption of innocence and burden of proof IV: 626-627, which under Com V Kozek, 399 Mass 514 (1987) preserved the rest of the erroneous prosecutors argument which derrogated the presumption of innocence and misstated the burden of proof again, IV: 615, 628, 629, and includes a golden rule violation, IV: 626-629, (in which the the prosecutor asks the jury to put themselves into George Perat's (position) world) (Defense counsel also correctly objects to the prosecutors arguing both seperate confessions corroborate each other if one was improperly admitted, making the error prejudicial, Com V Weichel, 390 Mass 62, 69 (1984) Com V Bassett, 21 Mass. App. Ct. 713, 714-715 (1986) See Varpley V Estelle, 203 F2d 159 (5th cir. 1983); Floyd V Meachum, 907 F2d 347, 355 (2nd cir. 1990); Mahorney V Wallman, ___ F2d ___ (10th cir 1990-91) (about being derrogating presumption of innocence); and cases cited in Kozek, supra. the objected to credability vouching "police on trial" theme argument and objected to comment that they would not risk their careers, wouldn't create evidence, be part of a conspiracy, TR. IV: 626-627, etseq, are exactly what won a few cases, Us V Richter, ___ F2d ___ (2nd cir 1988-9) Com V Mosby that I don't have in my cell, and the outrageous closing prosecutor's argument should have been raised on appeal since the DA excluded the same evidence, Com V Mosby or ___ (Mass. App Ct (1983) (a case brought on speedy trial and rappart trial 1983 or so ___ (Com V Burke, 373 Mass 509 (1977)

Since your defense Attorney disputed identification in his opening Statement TR. V: 114, 118-119, he should have filed A written Rodriguez/Pressley I.D. instruction request for both the disputed other Crimes I.D., and modified for circumstantial I.D. evidence in this case (e.g., general description blood, Hair, etc.)

V. IN cumulative multiple errors of ineffective trial counsel attack, trial counsel's failure to object to inadmissible, mischaracterized hearsay of officer Kelly testifying that Georges sister, Ms. Westcott, told Him she identified the gloves from the crime as the same, or hers, missing from her closet shelf, TR. V: 406 (Hearsay - Totally inadmissible in prosecutions case in chief)

VI. Jarvis testifies to severable First statement Dec. 1, confession TR. III: 483, 486, 490-491, that was prejudicial bad Act, Com V Brown, supra, And prosecutor brings in that George was looking for $ money to buy drugs TR.III: 490-491, more inadmissible prior bad Acts evidence, but for second statement, id.

VII. Since relevance and probative value was defined in Com V Ramirez, supra, 416 Mass at 50-53, by other similar misconduct in the same investigative unit, by other cases your trial Attorney was ineffective for not putting Attorney Jarvis, and all officers involved on the stand in the Dismissal motion Hearing, Brady V Powie, ~~205~~ 205 F.Supp 52, 53 (D.Mass 1988) (and some other cases I need to digest). This can be shown by Jarvis' trial testimony that Jarvis worked 8:00 AM-4 PM TR.III: 466, Kelly says Bloom at police station before 3:00 PM when Kelly got there TR. III: 457-458, And Jarvis says Bloom came into the interrogation room, so Jarvis Left, and Bloom's Arrival "precipitated the questioning of defendant at 12:40 P.M" TR.III: 502, with your first statement taken at 12:40 AM, TR.III: 516 And second statement taken at 3:00 PM, TR. III: 490-491.

    continued on page 5 →

In order, the following is a list
of trial errors I saw.

I. Tr. I:14, Young v Callahan, 700 F2d 32 (1st cir 1983)
denial of right to sit with counsel and not be seperated in
the dock; the trial judges security excuse finding is
clearly erroneous because there is no subsidiary record
facts to support the finding/speculation of a security
problem in your case, depriving you of the presumption of
innocence in the jury's eyes and ability to assist counsel
(I would add detailed record prejudice from VA), and lack of
state funds for court personnel can never be justification to
deny constitutional rights.

II. Tr. I: 55 et seq, in addition to 34 page randomness
rehearing motion of JRs on ch. 234A, §16, ch. 234 §§25,26 A, ch.277, §66,
Foley/Anguilo/us v Osorio issue, your judge made the same mistake as
the judge in U.S. v DeLange, 472 F2d 340, 369-370 (7th cir. 1972) by
not asking successive panels statutory ch. 234 §28 questions which
is per se reversible error, U.S. v Blount, 479 F2d 650, 653 (1973) (and
cases cited) particularly in light of closing argument/instructed error on
burden of proof and presumption of innocence into 2 of    — (ties into I. super nicely)

footnotes cont. / Exclusion by motion in limine should have raised a sixth and four-
teenth amendment 3-prong compulsory process clause, Washington v Texas, 388
U.S. 14, 19-23 (1967); Petti John v Hall, 599 F2d 476 (1st cir 1979), due
process, Chambers v Mississippi, 410 U.S. 284, 302-303 (1973), confrontation
clause, Olden v Kentucky, 488 U.S. 227 (1988), particularly where
the identical drugs were held as a matter of law to negate intent
in an identical case to yours, Real Hanover Insurance Co. v.
Talhouni, 413 Mass 781 (1992). Your lawyer either dupped you, or he
doesn't read, because he left out the main case following
Lewin that made Bloom's testimony relevant by locking him into
the same times working with your trial prosecution witnesses,
in the same unit, Commonwealth v Ramirez, 416 Mass 41, 50 -53
(1993) and related crime bias, Davis v Alaska, 415 U.S. 308
(1974) restricted police cross-examination would win under
Commonwealth v Koulouris, 406 Mass 281, 288-289 (1989) (discrete bias
in the investigation) Commonwealth v Stockhammer 409 Mass 867, 875
(1991) (discrete motive to lie)

Hi George:          (Copy to Mike Bryette
                     And counsel of Record)
          Did you get 3 double Page Review?)
          I got the missing cites.

          On your ~~[redacted]~~ Prosecutor using the evidence
he excluded against you in his closing arguments, well
actually "exploiting the absence of evidence he had
succeeded in excluding" Commonwealth V. Haralsva
16 Mass App Ct. 563, 568 (1983) would have won for
you on your trial lawyers Tr IV 626-627 (Also see 620?)

          US v Richter, 826 F2d 206, 209-211 (2nd Cir 1987)
(and cases cited) won on clearly improper argument that
the police wouldn't risk their careers, Just like
your case, Tr VI 626-629,

                                        471 n 2
          Finally, and this is the balls, Mahorney V
Wallman 917 F2d 469 471-474 (10th Cir. 1990) won a
Fed hab after state denied criminal appeal, only because
the prosecutor argued the presumption of innocence
didn't apply any more Just like your prosecutor
did Tr# 615,629, And the guys Judge failed to
instruct Com v Kane 19 Mass App Ct 129, 132 (1984) that
the presumption of innocence continues throughout
the trial right into the jury deliberations, etc, Just
like your Judge forgot to do Tr VI 635-639 :':
See Mahorney 917 F2d at 471 n 2, And Kane 19 Mass App ~~[Court]~~
at 139-142, id.


          You got a 110% win if your Lawyer did
what I laid out before and now, so its up to MikeB+you,
And let me know if you need one more, George Lenihan
                    Mike Wruck

PS. Mike B- where are 103 CMR 478 regulations
+ cases Just in had on list I still haven't    wrong 103 CMR 478
gotten ? dyslexicSolomon only got anything
3rd time. Also - let Justin know I did not get anything
from him, Sign it up, etc, so he needs I get bugged to do briefs in jails!

distortions of the burden of proof impacted a most fundamental right of the defendant to be presumed innocent, a cornerstone of our criminal law system and justice. Cf. <u>Commonwealth</u> v. <u>LaBriola</u>, 430 Mass. 569, 570-571 n.3 (2000) (stating that errors in a reasonable doubt instruction which allow a jury to convict the defendant on a burden of proof less than beyond a reasonable doubt necessarily require a new trial regardless of whether review is direct or collateral); <u>Commonwealth</u> v. <u>Gagliardi</u>, 418 Mass. 562, 568 (1994) (despite waiver, constitutionally deficient instructions on reasonable doubt that permit a jury to convict a defendant on proof less than proof beyond a reasonable doubt create a substantial risk of a miscarriage of justice).

Trial counsel's failure to object to most of the prosecutor's improper remarks cannot fairly be characterized as a reasonable tactical decision in the circumstances of this case. While it is possible that counsel deliberately chose to refrain from objecting during the prosecutor's closing because the court had not responded at all to two objections counsel made during the closing and had told counsel to "hold it" in response to a third objection, it is pure speculation on this record to conclude that such was or was not the case. What is perfectly clear is that having objected three times and been told to "hold it" the last time, counsel never sought to renew his objections or to make additional objections after the closing was completed and never objected to the judge's misleading instruction on the presumption of innocence or failure "sua sponte" to provide any curative instructions. Even if this was a deliberate, tactical decision by counsel, the record suggests no reasonable basis for such a decision and any such decision was not reasonable. If, on the other hand, counsel failed to perceive the errors in the prosecutor's argument and the judge's instructions, his failure to appreciate their significance at that time demonstrates ineffectiveness of counsel rather than immateriality of the errors.

38

circumstantially identifying the defendant as the victim's attacker, corroborated by blood and hair samples consistent with the defendant's samples and by the presence of gloves consistent with those owned by the defendant's girlfriend or his sister, the case was certainly not overwhelming or irrefutable. The victim's exculpatory testimony weighed heavily in the defendant's favor. The victim testified that her assailant was clean shaven, while unrefuted evidence at trial indicated that the defendant had a mustache and beard at the time of the assault. She could not identify the defendant at a line-up. When shown a photograph of the defendant at trial, she could not say that he was her assailant since the man in the photograph had a beard and mustache while her assailant was clean shaven, and she would not identify the defendant in person as her assailant at trial.

There were significant issues regarding the glove allegedly found on the bed and the blood from the bed which the prosecution claimed was the defendant's blood. This glove had a blood stain on it, from which only a single genetic marker could be determined. Apart from this glove, there was no explanation for how defendant's blood purportedly got on the bed. The assault occurred on the bedroom floor. There is no evidence the attacker ever touched the bed. No blood was found on the stick Prekop used to strike her attacker. (The stick was found on the bed.) The inference, therefore, is that the blood on the bed came from the glove. Yet Prekop denied seeing any gloves in the bedroom before she returned from the hospital. She denied referring to any such gloves in her written statement and suggested that any reference to them in her statement must have been added by the police. While Kelly testified that Defendant's sister said that the gloves were similar to ones she owned which she could not locate, Defendant's sister denied ever saying that. Kelly's testimony at trial that he found one glove on the bed and

36

## III. Substantial Risk of a Miscarriage of Justice

Where as here, a defendant moving for a new trial has received appellate review, the

presumption weighs in favor of finality of the verdict, and a new trial "should not be granted

except for substantial reasons." Commonwealth v. Amirault, 424 Mass. 618, 637 (1997),

quoting Commonwealth v. Tucceri, 412 Mass. 401, 406 (1992). The defendant is required to

present all claims of error at the earliest possible time, and failure to do so ordinarily precludes

relief. Amirault 424 at 639. "Absent extraordinary circumstances where there has been

---

conjecture, the defendant provides nothing to support his claim that earlier receipt of the results
would have made a difference in this case. Id.

The defendant also argues that trial counsel was ineffective in not calling a hair expert for
the defense. Rather than call a defense expert, defense counsel chose to cross-examine the FBI
witness both by questioning the absence of specificity in the witness's testimony as to how the
one hair in evidence matched the known samples and by pointing to disagreement in the
scientific community regarding hair comparison. Tr. II at 356-382. There is no evidence before
the Court to establish that use of a hair expert would have accomplished anything for the
defendant that was not accomplished on cross examination.

The defendant challenges the judge's instructions on general and specific intent, to which
trial counsel did not object. Commonwealth v. Gunter, 427 Mass. 259, 269 (1998). In this case,
general intent to commit rape, aggravated rape and indecent assault and battery charged was not a
disputed issue at trial. Even if the instructions were erroneous, there was no harm to the
defendant and certainly no risk of a miscarriage of justice, since identity, not intent, was the
issue.

Finally, the defendant seeks to reargue that the allowance of the motion in limine to
exclude evidence of the forged confession denied him the constitutional right to present a
defense. In his appeal, the defendant argued that "the result of the trial court's allowance of the
motion in limine was to unfairly limit the Defendant's opportunity to develop favorable
evidence." Def. App. Br. at 19-25. Since the Appeals' Court ruled that such evidence was
irrelevant, there was no constitutional right to present it. See, e.g., Capps v. Collins, 900 F.2d 58,
60-61 (5th Cir. 1990), citing Delaware v. Van Arsdall, 475 U.S. 673 (1986). Moreover, in his
appeal, the defendant cited cases discussing the defendant's right "to establish even a tenuous
defense if his right to have his day in court is to be guaranteed." Def. App. Br. at 20, citing
Commonwealth v. Noble, 24 Mass. App. Ct. 421 (1987) and Commonwealth v. Hood, 389 Mass.
581 (1983). That the defendant now brushes off this argument and presents a more elaborate
constitutional argument with federal precedent does not warrant the conclusion that the issue was
not raised before and rejected by the Appeals Court.

during his closing the prosecutor told the jurors:

> "Now what's Tom Kelly's role in the case? I want to suggest one thing to you right now, Tom Kelly, and this concerns what they knew or didn't know. On December 7, he is woken up and he comes down. You don't know what Tom Kelly knew or didn't know about George Perrot. It was never asked, 'What information did you have at that point that made you think George Perrot was involved.'" Tr. IV at 620.

Having successfully objected to defense counsel's argument that the police did not have sufficient information to obtain a warrant, the prosecutor was not then at liberty improperly to suggest to the jury that they had not heard facts concerning the defendant's involvement in these crimes, which Kelly may have known when he came to the police station. When defense counsel inappropriately referred to whether the police could have obtained a warrant, the prosecutor's objection was sustained by trial judge, thereby impressing on the jury that the argument they had just heard from defense counsel was inappropriate. See Commonwealth v. Earltop, 372 Mass. 199, 207 (1977) (Hennessey, C.J., concurring) ("The defendant's cause with a jury is, to say the least, probably not assisted when the judge finds it necessary within the hearing of the jury to label a defense argument as impermissible"). It was improper for the prosecutor to then take independent action and to do precisely what he had objected successfully to defense counsel's doing.

Furthermore, when defense counsel objected to these questions by the prosecutor, the judge did not address the objection. Instead, the prosecutor remarked that the jurors should not speculate as to what Kelly knew or did not know and moved on with his argument. Tr. IV at 620. Given these facts, it cannot be said that "conflicting statements of opposing counsel . . . probably served only to neutralize each other." Commonwealth v. Daigle, 379 Mass. 541, 549 (1980). It was improper for the prosecutor to make this argument after having voiced the same

32

different approach, an approach designed to have somebody open up, to be honest with him." Tr. 621-622. Although Jarvis testified that he took a laid back approach with the defendant, see Tr. III at 487, the prosecutor's comments exceeded fair inferences from the evidence and suggested that Jarvis had a unique ability to obtain the truth from the defendant, where no such evidence was introduced. Such a suggestion, furthermore, subtly vouched for Jarvis's credibility, since it implied that Jarvis, by using this approach, in fact extracted the truth from the defendant.

Moreover, the prosecutor improperly indicated that he had personal knowledge independent of the record and vouched for the officers' credibility by describing the fact that the officers were on call 24 hours a day and had had probably about the same amount of sleep as the defendant, and were doing their jobs both then [at the time of the investigation] and in testifying at trial. Tr. IV at 621. There was no such evidence, and the suggestion that the officers are doing their jobs by testifying improperly implies that they are, therefore, testifying truthfully.

In addition to improperly arguing inferences from evidence outside of the record, these statements reinforced the prosecutor's misstatements regarding the presumption of innocence by suggesting that to acquit Perrot, the jury had to believe that these government witnesses were lying and willing to lose their jobs.[16] The prosecutor's excesses did not end here, however, as he

---

[16] The defendant also argues that the prosecutor improperly suggested personal knowledge outside of the record when he characterized the Springfield police officers as "professional men." Tr. IV at 622, and the defendant as "a young man with nothing better to do than drink and use some drugs, [who] beg[an] committing these crimes . . . ." Id. at 627. See also id. at 628 ("The simple truth is this is the man who just isn't somebody you or I wouldn't recognize drinking, using the drugs, going into homes to do these acts . . . ."). The defendant takes these statements out of context. The defendant admitted to drinking and doing drugs, and evidence demonstrated as much at trial; he also admitted to the break-in at the McNabb residence. The prosecution accordingly was justified in relying on these facts to show not only a pattern by the defendant, but a motive for engaging in the charged conduct, although the characterization of the defendant as someone with nothing better to do than engage in criminal

more likely scenario was the one testified to by the defendant's sister, i.e., that she told Officer

Kelly only that they looked familiar. Id. at 594. Finally, defense counsel hinted at suspect

behavior in the police's handling of the evidence, Tr. at 592, even suggesting that the police may

have lied about the gloves to explain how the defendant's blood had gotten on the bed and may

have added a reference to the gloves in the victim's statement after she had signed it (though the

added reference was simply an unfortunate fact elicited by the Commonwealth during its own

case). Tr. I at 144, Tr. IV at 612.

The defendant never suggested, however, that the police had planted evidence or put the

defendant's blood on the gloves. Though the prosecutor was warranted in responding to the

defendant's insinuations of improper police conduct to some extent, his argument that the

defense was suggesting that the officers were engaged in a conspiracy, and thereby risking their

careers, went beyond his right to respond and vouched for their credibility. The prosecutor's

statements, in addition to other statements made by the prosecutor in closing, also referred to

evidence outside of the record.[15]

---

[15] As to these issues and those that follow, the judge generally instructed the jury that they were to accept closing arguments in stride, specifically instructing that (1) closing statements were not evidence, (2) the jury alone was to make determinations of fact, and (3) the jury's memory of the testimony controlled if counsel gave an impression to the contrary. Specifically, the trial judge generally instructed as follows:

"If in the course of closing arguments and closing arguments are helpful and legitimate, but in the course of closing arguments counsel gave you an impression how you must find facts or call to your attention a matter of evidence you don't remember collectively then you're free to ignore it because it's your memory of what the testimony was that controls. It is for you alone to make these decisions without pressure or interference from anyone. Tr. IV at 634. And later, "[n]ow, I should tell you what is evidence and what is equally important what is not evidence. Opening statements of counsel, closing arguments of counsel, [are] helpful and legitimate, but they're not evidence." Id. at 640-641.

28

vouch to the jury that he or she knows that the witnesses's testimony is true." Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989). See Commonwealth v. Griffith, 45 Mass. App. Ct. 784, 788 (1998) (finding improper vouching for the credibility of witnesses where prosecutor stated that to believe the defendant's story, they would have to believe that the police were lying and "[i]f you don't buy into the story, call him [apparently referring to one of the police officers] a liar, but I am suggesting to you by no means are these men lying to you. By no means are these men not telling the truth. They have nothing to gain"); State v. Williams, 674 A.2d 1372, 1375-1376 (Conn. App. 1996) (finding improper vouching where the prosecutor improperly suggested that finding for the defendant's version of the facts was tantamount to finding that police officers who had identified him had committed perjury in a narcotics prosecution).

Of course, a prosecutor is entitled to make a fair reply to a defense counsel's statements attacking the credibility of police officers. See Commonwealth v. Smith. 404 Mass. 1, 7 (1989).[13] Moreover, at least one case in Massachusetts has indicated substantial tolerance of arguments suggesting to the jury that to believe the defendant, they would have to believe that officers are lying. See Commonwealth v. Brown, 34 Mass. App. Ct. 222, 227 (1993). In Brown, the prosecutor stated during his closing: "In order for you ladies and gentlemen of the jury, to accept the testimony, I submit to you-- the argument put by the three counsel-- I submit to you that you must disbelieve the police. I submit to you what they're saying is that the police are lying." Although finding this was "inelegant argument," the Court did not find that the statements

---

26

preposterous... The world of George Perrot's innocence requires somebody else to be doing these things." Tr. IV at 627.

The prosecutor once more emphasized this point, stating that "[t]he world of George Perrot's innocence requires somebody else to be doing these things." Tr. IV at 628. In addition to piling on to other errors discussed infra, these statements suggested that to acquit the defendant, the jurors had to believe that the police and agents had lied and created evidence. This is a mischaracterization of the Commonwealth's burden of proof.[12] See United States v. Reed, 724 F.2d 677, 681 (8th Cir. 1984) (finding it improper for a prosecutor to argue that in order to believe the defendant, they had to believe that the government witnesses had lied); United States v. Richter, 826 F.2d 206, 209 (2nd Cir. 1987) (finding error in prosecutor's statement that the defendant wanted the jurors to believe that agents were lying). Such statements are misleading, because the prosecutor suggests that to acquit the defendant, jurors must believe that government witnesses committed perjury, when in fact the jury could acquit because they had a reasonable doubt as to the veracity of the government witnesses or because for some reason unrelated to the credibility of these witnesses, they were not satisfied that the Commonwealth had proved its case beyond a reasonable doubt. See Thomas, 401 Mass. at 112-117 (finding improper burden shifting where the prosecutor stated that the jury should acquit the defendant "if you find that he is truly innocent" or to suggest that the jury needed to disbelieve the Commonwealth's witnesses "in order to find the defendant not guilty," but no substantial risk

_____

[12] The defendant addressed these portions of the closing for other reasons, and not explicitly at least, for the impact they could have on the presumption of innocence. However, the point is discussed in at least one of the cases cited by the defendant under the rubric of vouching [United States v. Richter, 826 F.2d 206 (2nd Cir. 1987)] and is, in any event, open for the Court's consideration because the Court must consider the entire argument to determine the harm potentially caused by the prosecutor's explicit misstatement of the presumption of innocence.

As a result, the prosecutor misstated the significance of the presumption of innocence with the result that the jury was potentially misled into believing that the presumption disappeared once the presentation of evidence began. Such a misstatement necessarily implicates the burden of proof- potentially lessening that burden. It also has the potential to mislead the jury into believing that the defendant may be obliged to come forward with evidence, since the presumption coupled with the burden on the Commonwealth relieves the defendant of any obligation to prove or disprove anything. This right is a fundamental constitutional right- basic to a fair trial. See Commonwealth v. Thomas, 401 Mass. 109, 113 (1987).

The error was compounded by additional improper argument by the prosecutor and by the judge's instructions.[11] See Thomas, 401 Mass. at 113 (in considering the effect of an error in closing argument, the Court looks to the entire argument and the judge's curative or general instructions). Here, no curative instructions were given. (None were sought.) The trial judge had a "duty," however, to correct arguments impinging on constitutionally protected rights. See Commonwealth v. Awad, 47 Mass. App. Ct. 139, 142 n.1 (1999). "The better practice is for the judge to intervene on his own motion." Id., quoting Commonwealth v. Hawley, 380 Mass. 70,

---

[11] With regard to the presumption of innocence and the Commonwealth's burden of proof, the trial judge instructed:
   "This is a criminal case and in the beginning of this trial the defendant has the benefit of the presumption of innocence. The law says that a person is presumed to be innocent until he has been proven guilty beyond a reasonable doubt. And that means that no inference unfavorable to the defendant may be drawn from the fact that he's been indicted. . . . A defendant may be found guilty only on the basis of evidence produced here in court during the trial and no other basis. So an indictment is not any evidence whatsoever of this guilt.
   A defendant in a criminal case is not required to produce any evidence of his innocence. The prosecution bears the burden of proving beyond a reasonable doubt every essential element of the crimes charged against the defendant. . . . That burden never shifts. It stays with the Commonwealth throughout the entire trial." Tr. IV at 635-638.

22

and appellate counsel failed to make this point to the Appeals Court. The defendant, however, seriously mischaracterizes the prosecutor's argument by taking it completely out of context. What the prosecutor said was that, if you are a police officer coercing a confession from a defendant, "you can bet you are going to have the facts of the crime right in the confession. But they don't do that." Id. Read in context, it is perfectly clear that the prosecutor was not referring to facts outside the evidence or to police conduct generally, but rather to the fact that the defendant's written confession itself demonstrated that the police did not fabricate it or obtain it by coercion in this instance. This was proper argument.

The Commonwealth therefore correctly argues that the factual premise upon which the defendant relies, that the prosecution successfully excluded relevant evidence that the police participated or acquiesced in the fabrication of a confession, was removed from this Court's consideration by the Appeals Court's decision that the excluded evidence "did not have even tangential relevance to the evidence on which the Commonwealth was to rely; it suggested no shortcoming in the police investigation of the defendant's case." Perrot, 38 Mass. App. Ct. at 482.

### B. Prosecutor's Comments During Closing Argument Regarding the Presumption of Innocence

It is axiomatic that "the presumption of innocence continues throughout the case." Commonwealth v. Kane, 19 Mass. App. Ct. 129, 139 (1984). A prosecutor therefore may not suggest that the defendant has some burden to prove his innocence. See Commonwealth v. Pagano, 47 Mass. App. Ct. 55, 62 (1999) (finding that a prosecutor's statement that "the cloak comes off," referring to the presumption of innocence, implied that the defendant had some

related to another rape at a different address, and that it would have opened up collateral matters outweighing any probative value. See Tr. II at 386-387. Judge Simons likewise did not determine, nor was he required to determine, whether the police were involved in the defendant's forged confession; he merely found that such evidence was more prejudicial than probative, a determination largely within his discretion.

The insurmountable obstacle the defendant faces in arguing that the prosecutor's statements referred to evidence excluded by the prosecution, however, is the Appeals Court holding that the excluded evidence "did not have even tangential relevance to the evidence on which the Commonwealth was to rely; it suggested no shortcoming in the police investigation of the defendant's case." Perrot, 38 Mass. App. Ct. at 482. Although Judge Simons made no express finding that the excluded evidence was irrelevant, see Tr. II at 387 ("[Evidence of the false confession] will open up collateral matters that far outweigh any probative value, if any may be in this case"), emphasis added, this Court is nonetheless bound by the Appeals Court's ruling that the excluded evidence was irrelevant.

The defendant argued on appeal that allowance of the motion in limine was error because the defense had intended to use such evidence to corroborate the defendant's position that although he remembered confessing to the McNabb break-in, he never remembered confessing to the Covel Street and Malibu drive break-ins. Def. App. Br. at 21. Moreover, the appellate brief emphasized the fact that the defendant had been subjected to an intense interrogation and evidence at trial indicated untoward behavior by the police, including a statement by the victim that a reference to the knit gloves had been added to her statement. Id. at 21-22. Bloom's heavy involvement in the defendant's case was also highlighted, including the fact that Bloom was

18

excluding evidence from the consideration of the jury does not later give that party license to invite inferences (whether true or . . . false) regarding the excluded evidence." Id. In each of the cases the defendant cites in support of his claim that the Prosecutor committed this error, the prosecution either referred to excluded evidence or requested the jury to reach a conclusion that was directly rebuttable by excluded evidence. For example, in Mosby, the prosecutor asked the jury to infer that a defendant was silent in the face of an accusation after having successfully excluded testimony regarding his response to accusations. Id. at 8-9. See also Commonwealth v. Burke, 373 Mass. 569, 575 (1977) (finding grounds for reversal in the prosecutor's referral to the death of an alleged perpetrator after the trial judge excluded a death certificate); Commonwealth v. Haraldstad, 16 Mass. App. Ct. 565, 568 (1983) (finding it improper for a prosecutor to refer to an expert's opinion as to the absence of sperm in a rape victim, having successfully excluded clarifying testimony in that regard). These cases are distinguishable from Perrot's case.

In this case, the Commonwealth moved in limine to exclude any reference to the forged confession. Judge Simons adopted Judge Moriarty's findings, set out in relevant part above. See Tr. II at 386. In doing so, he excluded "the proposed testimony of a prospective defense witness Francis Bloom, or any other evidence relating to an alleged "false confession" of the defendant, George Perrot . . . ." MNT, Exhibit 1. In closing, the prosecutor then suggested to the jurors how unlikely it would be that the police could create or modify the defendant's confession, asking "[h]ow difficult would it be for the police to makeup [sic] a statement and have him sign it?" and asserting that the evidence suggested that they did not "add to it to make it better." Tr. IV at 624-625. The prosecutor then told the jurors that the defendant wanted them to believe in a world where FBI agents risk their "reputations and careers to create evidence" and one where

16

appeal and has not been waived. See, e.g., Commonwealth v. Cormier, 41 Mass. App. Ct. 76, 77

(1996) (finding ineffective assistance of appellate counsel for failing to argue insufficiency of

evidence on appeal).

Furthermore, none of the errors discussed herein were properly preserved at trial for

appeal, other than the ineffective assistance of counsel claims. During the prosecutor's closing,

defense counsel objected only three times. The first two objections went unaddressed by the trial

judge for reasons unknown on this record. Without a ruling on those objections, appellate

counsel was confronted with issues that had not been preserved. Cf. Amory v. Commonwealth,

321 Mass. 240, 251 (1947) (refusing to address the merits of an objection where the parties failed

to obtain a ruling by the judge); Mass. R. Civ. P. 46. Reporter's Notes-1973 ("Without a specific

objection and a ruling on it, the appellate court under Rule 46 will generally not review the

question . . . .").

Upon trial counsel's third objection, which followed the prosecutor's suggestion that the

agents would be risking their careers and reputations to conspire to create evidence, discussed

infra, the trial judge told defense counsel to "hold it." Although defendant now claims that he

was deprived of an opportunity to raise specific objections after the closing, the record before the

Court fails to support that claim. The record does reveal that trial counsel made no specific

objection or request for curative instructions, and that he did not renew any of his objections.

after the closing or before the jury was charged. See, e.g., Commonwealth v. Marquetty, 416

Mass. 445, 450 (1993) ("Defense counsel did not object specifically to anything in the closing

nor did he make a request for a curative instruction"). Since trial counsel did not renew his

objections or request relief, he did not preserve the issues for appeal. See Commonwealth v.

14

(4) the trial court erred in admitting evidence of the product rule, (5) trial counsel provided

ineffective assistance in introducing a statement which contained references to the defendant's

other crimes, and (6) the jury was not drawn according to statutory procedure.  See generally Def.

App. Brief.  The Appeals Court affirmed the convictions, addressing the defendant's first two

claims and finding that the others were "without merit and warrant[ed] no discussion."  See

Commonwealth v. Perrot, 38 Mass. App. Ct. 478, 482 (1995).  The defendant now moves for a

new trial arguing, inter alia, that appellate counsel provided ineffective assistance in failing to

argue on appeal various error at trial, as well as that trial counsel was ineffective in failing to

preserve those issues for appeal.

### Discussion

I. Waiver and Ineffective Assistance of Appellate Counsel

The defendant designates several trial errors in this case that were either not preserved for

appeal or that were waived by not being asserted on appeal, or that were decided adversely to the

defendant by the Appeals Court in Commonwealth v. Perrot, 38 Mass. App. Ct. 478 (1995).  He

also asserts ineffective assistance of trial counsel, arguing that since both his trial and appellate

counsel were appointed by the Committee for Public Counsel Services ("CPCS"), he has not

waived a claim of ineffective assistance of trial counsel for failing to assert such a claim on his

direct appeal.

In Commonwealth v. Egardo, 426 Mass. 48, 49-50 (1997), the Supreme Judicial Court

held that a claim of ineffective assistance of trial counsel was not waived on appeal where both

trial and appellate counsel were "employed" by CPCS.  In so doing, the Court likened CPCS

attorneys to associates in a private firm, where an attorney would hesitate to challenge a fellow

12

Moriarty found that Bloom "arranged the production of what purported to be a confession by Perrot. . . . Bloom then signed Perrot's name on the bottom of the confession. . . . He then signed his own name and <u>caused</u> the name of Sergeant Thomas Kelly of the Springfield Police Department to be signed as witnesses." <u>Id</u>. at 2, emphasis added. His findings with regard to the interrogations were as follows:

> "Bloom then caused Adkins and Timmerman to be picked up (on what pretext is not clear) and taken to the Springfield police station where he interviewed them separately. He confronted both of them with the bogus Perrot "confession" and threatened to prosecute them if they did not cooperate with him." <u>Id</u>. at 3.

Consequently, while the findings discredit Bloom's testimony that it was not he who signed the defendant's name to the document, they are vague as to how Bloom "caused" Sergeant Kelly's name to be affixed to the document or how Bloom "caused" Adkins and Timmerman to be picked up. Neither defense counsel nor the prosecutor asked Adkins or Timmerman if the police had interrogated them prior to Bloom's arrival. Moreover, the Court received no testimony from any of the officers who picked up Adkins or Timmerman, or from officers at the police station who were present during the interrogation. Judge Moriarty may have even considered the police to have participated in the interrogations. <u>Id</u>. at 4 ("I do not consider them to be acceptable tactics for police officers, but much less so for a prosecuting attorney and member of the bar").

It was not Bloom's practice to submit evidence such as hair and blood samples to the FBI. MTD at 57. He testified at the motion to dismiss that he was not involved in the collection or retention of physical evidence in the defendant's case. <u>Id</u>. at 68. However, at trial, it became evident on the record prior to Judge Simon's ruling on the Commonwealth's motion in limine to

10

Q.    Would you repeat what he told you?

A.    That he used my name on the document because I was prominently involved in the investigation. Id. at 37.

When asked about imparting false information to a suspect, Kelly testified that his understanding was that "subterfuge deception is an accepted practice as long as the use of that false information or phony information does not induce a person to make a false confession. You do not use the promise of a lighter sentence or the fact a person would be allowed to go free if they give a confession." Id. at 41. He clarified this position on cross examination, stating that forgery is not acceptable if the signature is actually copied, whereas falsely placing someone's name on the bottom of the paper is an acceptable practice. Id. at 43-44.

According to Bloom, the police approached him because a blood stain in the Marchand case had exculpated the defendant, yet the police were confident that the defendant, Timmerman, and Adkins were involved in that incident. Id. at 66. The police asked Bloom to go to the police station, as they wanted to approach Timmerman and Adkins and were "looking for approval as to what type of subterfuge they could use in talking with them." Id. at 59, 67.

Bloom testified that he could not remember where the forged confession was typed and who typed it, but he remembered that "[u]ltimately before anything was done with it [he] had seen it and approved it." Id. at 49. Bloom first stated that he did not remember whether he or one of the officers had signed the defendant's name to the documents, id. at 50, but then stated that "I know it wasn't me." Id. at 51.[5] He testified that it appeared that the defendant's signature

---

[5] When asked who else was involved in the investigation of the Marchand case besides himself and Sergeant Kelly, Bloom answered "Chief Stelzer, Captain Arpin, Sergeant Kennedy, Sergeant McFarlin, [and] Detective Jarvis" of the Springfield police department. MTD at 55. Sergeant Kennedy and Detective Jarvis testified in the defendant's case. Detective Jarvis recorded the defendant's confession. See Tr. III at 488-489.

8

an individual. Id. at 370-371.

During a series of interrogations upon his arrest, the defendant first denied any involvement in the Prekop break-in, but eventually confessed to breaking into the houses on Covel and Malibu streets, while denying that he had sexually assaulted anyone. See generally Perrot, 407 Mass. at 541-542. The defendant has consistently denied "[b]oth the fact, and the validity, of his statements to the police . . . ." Id. at 549, and has claimed that any statements made were not voluntary.

### Motion to Dismiss

Prior to his second trial, the defendant moved to dismiss the indictments based on a fabricated confession, dated December 16, 1987 (two days after his original conviction), which Bloom utilized in the investigation of a related case ("the Marchand case") in an attempt to extract confessions and gather evidence from two individuals whom the police believed were the defendant's accomplices in that incident.

At the hearing on this motion, defendant's counsel, then Attorney Jerry Rideout, called as witnesses Jeffrey Adkins ("Adkins") and Robert Timmerman ("Timmerman"), who were the two individuals Bloom confronted with the forged confessions at the Pearl Street police station. Adkins testified that Bloom confronted him with the confession, which Adkins believed to be authentic, and threatened to put him in jail. MTD at 19-20. Bloom also confronted Timmerman with the confession and threatened him with jail. Id. at 23.

When asked how he was brought to the police station, Timmerman testified that "they," presumably meaning the police, picked him up at his house and brought him there. Id. at 21. They wanted to question Timmerman about the alleged rapes, including the Malibu street break-

6

the incident. Id. at 187. Ms. Prekop was taken to the hospital approximately ten minutes after he arrived. Id. at 188. Kelly found two gloves in the room. Although he testified at trial that one glove was on the bed and the other was on the floor at the foot of the bed, he acknowledged on cross examination that he had previously testified the gloves were "on the floor, near the bed." Id. at 192; Tr III at 448-449. Kelly folded Ms. Prekop's bedsheet, which appeared to be soiled and to have some fibers on it. Id. at 194. He noticed that at least one of the gloves had a reddish brown stain at the base of a finger. Id. at 196. These materials were submitted to the FBI laboratories in Washington, D.C., where both a blood stain and a single hair sample were extracted from Ms. Prekop's bedsheet. Tr. II at 290-292, 352. In addition, blood was extracted from the gloves. Id. at 284-285.

The defendant was arrested on December 7, 1985, in connection with a purse snatching at a restaurant and subsequent break-in at another residence (the "McNabb" residence). Id. at 389-390. After questioning the defendant, Kelly obtained a search warrant to search his residence at 87 Malibu Street. Id. at 405. He brought the knit gloves to the defendant's residence. Id. at 406. Upon arriving, Kelly spoke with the defendant's sister, Nancy Westcott ("Westcott"), asking her whether the gloves were hers. Id. According to Kelly, she responded that she had a pair just like them, but upon searching for them in a closet, found that they were missing. Id. 406-407. Westcott, the defense's only witness, testified that although she told Kelly that the gloves looked familiar, possibly belonging to the defendant's girlfriend, she told Kelly that the gloves did not belong to her. Tr. III at 546.

Sergeant Thomas Kennedy ("Kennedy"), observed two vials of blood being drawn from the defendant's arm on March 31, 1987, which were tagged as evidence in the crime prevention

4

prejudicial in several regards. He argues that appellate counsel provided ineffective assistance in failing to argue these trial errors on appeal, and that trial counsel was ineffective in failing to preserve for appeal some or all of these issues. The Court heard oral arguments on June 26, 2001.[2] For the reasons discussed below, Perrot's motion for a new trial is **ALLOWED**.

## Background

This case arises out of two incidents which occurred on November 30, 1985, one at Covel Street, the other at Malibu Street, in Springfield, Massachusetts. The Commonwealth sought to prove that the defendant committed a break-in at Covel Street and shortly thereafter broke into 27 Malibu Street in a similar manner and assaulted and raped an elderly woman who resided there.

The victim at 27 Malibu Street. Ms. Prekop. who was 84 years old at the time of the second trial, was awakened by her dog's barking. Tr. I at.129.[3] After checking her house and returning to her room, she heard sounds of an intruder breaking glass in her entryway. Id. at 133-134. She then retrieved a stick from her bedroom. went to her kitchen. turned on the light. and discovered a man standing there with his hands covering his face. Id. at 135. After she struck

---

[2] The Court issued an Interim Order requiring the Commonwealth to submit a memorandum in opposition to so much of Point VIII of Defendant's Memorandum as raised the issue of ineffective assistance of appellate counsel and requiring both parties to submit memoranda addressing why all other issues had. or had not. been waived by the defendant's failure to raise them in his direct appeal. After considering these memoranda. the Court issued a further order allowing the parties to present evidence solely with regard to the defendant's claim that appellate counsel was ineffective in failing to raise on appeal trial errors the defendant argues in his motion for a new trial. At the scheduled evidentiary hearing. both parties waived their right to present evidence.

[3] Citations herein will be designated as follows: Memorandum in Support of Defendant's Motion for a New Trial ("MNT"/page or exhibit): Trial Transcripts ("Tr." volume/page); Transcript of the Motion to Dismiss ("MTD" page ): Defendant's Appellate Brief ("Def. App. Br."/page).

## ADDENDUM

Judge Wernick's decision (9/11/01)

01-P-1626 Docket Entries

1993-1994 Appellate Counsel correspondence

01-P-1626 Panel decision

Commonwealth V. Perrot, 38 Mass. App. Ct. 458 (1995)

Commonwealth V. Perrot, 407 Mass. 539 (1990)

In light of the ten arguments on fresh com-
plaint hearsay as substantive evidence of rape penetration
(pages 14-18,36,Supra) when "it cannot be presented to esta-
blish the truth of the complaint itself", COMMONWEALTH V.
LICATA, 412 Mass. 654,657(1992) and the victims ambiguous tes-
timony being insufficient, COMMONWEALTH V. BRATTMAN, 10 Mass.
App.Ct. 579,584(1980); COMMONWEALTH V. NYLANDER, 26 Mass.App.
Ct. 784,791(1989); COMMONWEALTH V. CAPONE, 39 Mass.App.Ct. 606,
608(1996), when the pervasive presumption of innocence mis-
statements, PAGANO,Supra, are considered cumulatively with the
prosecutor manipulatively taking unfair advantage of excluded
evidence, PAXTON V. WARD, 199 F.3d. 1197,1216-1218(10th Cir.
1999), the otherwise close circumstantial case of forensic
evidence, PHOENIX V. MATESANZ, 189 F.3d. 20,27(1st Cir.1999)
even combined with a questionable confession to other indict-
ments does not constitute a sufficiently strong case to deem
such cumulative errors harmless, COPPOLA V. POWELL, 878 F.2d.
1562,1569-1571(1st Cir.1989); MAHORNEY,Supra, 917 F.2d. at 474;
WASHINGTON,Supra, 228 F.3d. at 707-709; UNITED STATES V. DWYER,
843 F.2d. 60,65(1st Cir.1988).

After judge Wernick's decision found "the
defendants claim that appellate counsel provided ineffective
assistance obviously could not have (been) included in his
direct appeal and has not been waived" (at pages 13-14) he did
not decide that issue because he granted a new trial on inef-
fective assistance of trial counsel based miscarriage of jus-
tice grounds (at pages 38-39) followed by the 01-P-1626 panel
not considering the issue at all. Because ineffective appel-
late counsel claims do not easily fit into the normal miscarr-
iage of justice analysis, based on the foregoing meritorious
issues omitted from the direct appeal, ALOFAR should be gran-
ted to establish guidelines for deciding such appellate coun-
sel grounds and the proper remedy of either a new appeal or a
new trial.

STATES V. MANNING, 23 F.3d. 570,573-576(1st Cir.1994); UNITED
STATES V. RICHTER, 826 F.2d 206,209(2nd Cir.1987); UNITED
STATES V. MARTINEZ, 981 F.2d. 867,871(6th Cir.1992) found to
create a risk of a miscarriage of justice in COMMONWEALTH V.
McCOY, 59 Mass.App.Ct. 284,294-297(2003) without the contem-
poraneous objection in this case (IV:627) opening up the entire
argument for review, COMMONWEALTH V. KOZEC, 399 Mass. 514,532
(1987).

      Because cases involving alleged sexual attacks
"turn on the relative credibilities of the defendant and the
prosecuting witnesses, a strict adherence to the rules of
evidence and appropriate prosecutorial conduct is required to
insure a fair trial", MARTIN V. PARKER, 11 F.3d. 613,616-617
(6th Cir.1993).

      In the case at bar, both the 01-P-1626 panel
and the superior "court failed to discuss significant problems
with (Mary Prekop's) version of events. First and foremost of
which was the fact that there was no physical evidence that (she)
had been raped", GRAVLEY V. MILLS, 87 F.3d. 779,789(6th Cir.
(1996) because absence of medical or physical evidence of rape
is always a significant blow weakening or devostating a state's
theory of aggravated rape, BUTLER V. HASKING, 47 F.3d. 1167(6th
Cir.1995). Like GRAVLEY,Supra, unobjected to improper closing
argument often results in orders for a new trial where no phy-
sical evidence corroborates penetration, WASHINGTON V. HOFBAUER,
228 F.3d. 688,694-695,709(6th Cir.2000) unless it was an iso-
lated misstatement  outweighed by evidence "in the context of
the entire trial... (after the court) reviewed the trial tran-
script", UNITED STATES V. GRASSROPE, 342 F.3d. 866,871(8th Cir.
2003).

      Without medical or physical corroboration
the victims insufficient or ambiguous fourteen word, one sentence,
comment (I:140) must be contrasted to the defendant's repeated
denials (III:490,519) making this case a classic duel of credi-
bility, COMMONWEALTH V. ROSSI, 19 Mass.App.Ct. 257,259-260 n.4
(1985); COMMONWEALTH V. KELLEHER, 395 Mass. 821,827-828(1995)

of justice if the evidence and the case as a whole leaves us with a serious doubt that the defendant's guilt has been fairly adjudicated", ALPHAS,Supra, 430 Mass. at 27.

Where the evidence here involves an arguably in-sufficient fourteen word, one sentence, vague and ambiguous vic-tims response on rape penetration (I:140) with multiple closing argument errors, ten of which misrepresented fresh complaint hearsay as substantive evidence (I:106-107,112;IV:586-587,588, 614,617,624,626,627,630), this ALOFAR should be granted to issue an opinion guiding lower courts to review prior appellate briefs, GRAY V. GREER,Supra, 800 F.2d. at 646-647, as part of the case as a whole with focus on evidence strongly or weakly supporting each individual conviction, ALPHAS,Supra; DARDEN,Supra.

Because the focus of any ineffective assistance of appellate counsel claim must be on prejudice in the sense of a more onerous standard of appellate review, caused by trial counsel's failure to object, and likelihood of reversal if omit-ted issue's were added to the briefs, such focus must combine post-conviction motion issues with prior direct appeal issues, GRAY V. GREER,Supra, not seperate and preclude them based on the prior affirmance as judge Wernick's decision (page 18-20) and the 01-P-1626 panel decision (page 31 footnote 23) mistakely did, id. This should be considered on ALOFAR with erroneous 01-P-1626 panel improper de novo standard of review failing to "consider whether (the) motion judge committed a significant error of law or other abuse of discretion in allowing (the) defendant's motion for a new trial", COMMONWEALTH V. MARTIN, 427 Mass. 816,817(1998) which requires a "fact-intensive inquiry", SCHLUP V. DELO, 513 U.S. 298,332(1995) on the record showing of actual innocence of the rape conviction which prejudicially spilled over to all other convictions based on the heinous rape arguments. "The mere fact that a defendant stands accused by a sympathetic victim of a repulsive crime does not justify depriving him of his constitu-tional right to a fair trial", ELLSWORTH V. WARDEN, 333 F.3d. 1, 13(1st Cir.2003)

the panel's refusal to consider these 1995 direct appeal re-
lated prejudicial arguments amounted to a refusal to use the
correct analysis for ineffective appellate counsel claim,
COMMONWEALTH V. SOWELL, Supra. In contrast to police believing
other perpetrators were involved as the basis for the false
confession. (see Bloom testimony at dismissal hearing trans-
cript page 47) The trial prosecutor improperly argued "there
is not more than one person in there on 27 Malibu Drive with
Mary Prekop on November 30" (IV:626) which also showed pre-
judice from the excluded government misconduct evidence, PERROT,
Supra, HARALDSTAD, Supra.

    Further harm and prejudice arise from direct ap-
peal counsel's failure to brief the related cumulative closing
argument error issue because proper 1995 exhaustion of state
remedies would have resulted in 28 U.S.C. § 2254 pre-AEDPA Ha-
beas Corpus relief, PAGANO V. ALLARD, 218 F.Supp.2d. 26,32-39
(D.Mass.2003); CARGLE V. MILLER, 317 F.3d. 1196,1122-1125(10th
Cir.2003) where the trial Judge refused to correct the problem
(IV:627), MAHORNEY V. WALLMAN, 917 F.2d. 469,473 n.4(10th Cir.
1990) and similar circumstantial evidence including confes-
sions, blood test groupings, links to the crime scene, without
an aggravated sexual assault victims positive identification,
were held insufficient for a First Circuit Court of appeals
finding that constitutional error be deemed harmless, COPPOLA
V. POWELL, 878 F.2d. 1562,1569-1571(1st Cir.1989). Contrast,
UNITED STATES V. GRASSROPE, 342 F.3d. 866,871(8th Cir.2003). In
the alternative, even if a state miscarriage of justice anal-
ysis did not require relief, to now permit Federal Habeas Cor-
pos review, this court should restart the 28 U.S.C. § 2244 one
year clock by vacating the judgement and reimposing it, COMMON-
WEALTH V. STUBBS, 15 Mass. App. Ct. 955(1983) because "cases
involving Sixth Amendment deprivations are subject to the gene-
ral rule that remedies should be tailored to the injury suffered
from the Constitutional violation". UNITED STATES V. MORRISON,
449 U.S. 361,364(1981); because "the only appropriate remedy for
a violation of the Sixth Amendment is to restore the defendant
as much as possible to the circumstances that would have existed
had there been no constitutional error", UNITED STATES V. DURAN-
BENITEZ, 100 F.Supp.2d. 135,155(ED NY 2000)

The new trial motion judge's decision (pages 13-14) mistakenly deemed the ineffective assistance of trial counsel claim waived based on successor counsel's failure to raise it in the direct appeal and such decision also reflected sufficient confusion about three unexplained objections to warrant a remand for an evidentiary hearing to resolve the question of denial of an opportunity to make further objection when a recess was called immediately after closing argument (IV:630). The Appeals Court decision (page 8) focused on "the absence of objection", id, and failed to recognize both the timely objection to obviously improper credibility vouching (IV:627) and the trial Judge immediately excusing the jury at the conclusion of the prosecutor's summatiom which precluded counsel from obtaining a prompt curative instruction, id. Without an evidentiary hearing neither the motion Judge, nor the Appeals Court, nor this Court can know whether the trial Judge also left the bench without giving trial counsel an opportunity to register further objection at sidebar, MASSARO, Supra, 123 S.Ct. at 1694.

With the exception of trial counsel's timely proper objection to credibility vouching [base on facts not in evidence and taking unfair advantage of excluded evidence] (IV:627) the many other (IV:620,621-622,624-627,630) "failure(s) to object (were) based on simple incompetence and not sound trial strategy", WASHINGTON V. HOFBAUER, 228 F.3d 689,707(6th Cir.2000). While the motion Judge's miscarriage of justice finding is sufficient for this court to find a breakdown in the adversarial testing process and absent such non-strategic omission by counsel the result of the trial and direct appeal probably would have been favorably different, STRICKLAND V. WASHINGTON, 466 U.S. 668,694-696(1984); because the appeals "court would have unanimously ordered a new trial if an exception had been saved", COMMONWEALTH V. ALPHAS, 430 Mass. 8,13 n.6(1999) quoting COMMONWEALTH V. FREEMAN, 352 Mass. 556,563 (1967) and COMMONWEALTH V. MIRANDA, 22 Mass. App. Ct. 10,21 (1986).

-38-

ALOFAR is requested to be allowed for the

purpose of adjudicating the unwaived and undecided issue of

ineffective assistance of direct appeal counsel.

### MATERIAL FACTS RELATED TO INEXPERIENCED DE-FENSE COUNSEL'S ARGUMENT EXACERBATING THE PROSECUTOR'S MISUSE OF THE FRESH COMPLAINT

In addition to arguing in his opening that

juror's would "see a statement that she gave at eight p.m. the

night that this rape occurred" (I:112) "on the same date that

she had been raped" (I:112) defense counsel's closing argument

on whether "George Perrot committed this rape case" (IV:614)

misrepresented the victim, goes into detail of the rape" (IV:

584) when a "man beat this woman up, stays there and rapes her"

(IV:588) "and when I asked her the second time showing her the

picture, if this could have been the man that raped her, do you

remember what her response was ? "How can I say that this is

the man that raped me ? This man has a beard and mustache. The

man who raped me was clean shaven." (IV:586-587)

When shown the photographs Mary Prekop

never used the word rape and merely testified as follows:

> "Q. The man furthest on the left her.
> A. You mean the one on the end ?
> Q. Yes ma'am does that look like the man who assaulted you on November 30, 1985 ?
> A. How can I say it was when this man has a mustache and a beard ? This fellow didn't have any mustache."

(IV:158)

Following defense counsel's blunders the pro-

secutor argued the fresh complaint statement as substantive

evidence of rape, as set out in ALOFAR pages 14-18, Supra.

Q. And this was concerning the Mae
   Machand incident, was it not ?
A. I am not certain.
Q. Did he accuse you of taking part
   in the Mae Marchand rape ?
A. Yes.
Q. Did he ever mention miss Prekop
   to you at all ?
A. Yes.
Q. When did me mention miss Prekop ?
A. When we were down there.
Q. Did he accuse you of taking part
   in the Prekop case ?
A. Yes.
Q. Was that by showing you this state-
   ment ?
A. Excuse me.
Q. In the form of showing this state-
   ment ?
A. Correct.
Q. Beyond that was the focus of the
   conversation the Marchand case ?
A. Both really.

The Court: I'm sorry (indicating)

The Witness; Both I think.

(2/25/91 Tr. pages 24-26)

With respect to Mrs. Marchand's sheet, pro-
secutor Bloom testified that "the stain that had been removed
from the bed in this case exculpated Mr. Perrot as the doner
of the stain" (page 66), and both Timmerman and Jeffery Atkins
testified that in addition to the Marchand case police ques-
tioned them about participating in a series of burglary rapes
"in the Malibu street neighbohood" which included the Prekop
case (pages 17-20, 22-26).

During the retrial the prosecutor's motion
in limine was allowed excluding prosecutor Bloom's and other
witnesses testimony concerning the pattern of government mis-
conduct. And both of the other suspects in the Mary Prekop

-34-

where George Perrot is innocent ?
It's a world where two FBI agents
get together and risk their reput-
ations and careers to create evi-
dence to reach conclusions not sup-
ported.

Mr. Ferrara: Objection, you honor

The Court: Hold it.

Mr. Vottero: It's a kind of world
where Tom Kelly and Mr. Jarvis
get together to create evidence to
pin on this poor man. It's the kind
of world where for him to be in-
nocent there has to be such a con-
spiracy you can't believe... That's
preposterous. It's preposterous."

(IV:626-627)

"The world of George Perrot's in-
nocence requires somebody else to
be doing these things."

(IV:628)

"Now what's Tom Kelly's role in the
case ? I want to suggest one thing
to you right now, Tom Kelly, and this
concerns what they knew or didn't
know. On December 7, he is woken up
and comes down. You don't know what
Tom Kelly knew or didn't know about
George Perrot. It was never asked.
What information did you have at that
point that made you think George
Perrot was involved.

Mr. Ferrara: Objection, your honor."

(IV:620)

Mary Prekop's prior April 30, 1984 and July
2, 1985 house break false rape accusation evidence was exclud-
ed (I:19) as noted during the prosecutor's sidebar misrepre-
sented objection to defense closing argument on absence of
sufficient evidence for a warrant (IV:596). At page 32 of the

sault and battery on her. She testi-
fied to that. **Then he raped her. it
was an aggravated rape. A rape done
during the commission of this burglary.
And then he stole from her purse and
left. I ask that you look at this evi-
dence, that you consider what is rea-
sonable doubt and what it's not and
render the truth so that we may con-
front George Perrot with what he could
not confront himself with, that he is
guilty of these crimes."**

(IV:629-630)

By linking the non-existant evidence of
rape to the plural term "these crimes" the actual focus of
the last section of closing argument the jurors' heard was
aimed at enlisting them to join the governments' team covering-
up the absence of any direct evidence, on the essential ele-
ment of penetration, while asking the jurors to become part of
the prosecutors' world considering the defendant confessed to
rape based on his affirmative denial of any sexual assault.

ALOFAR is requested to reaffirm the allow-
ance of the motion for a new trial on the serious prejudice
arising from these improper and misleading rape arguments
spilling over to all other charges where both the motion
judge's decision (page 33) and 01-P-1626 panel decision (page
29 n.19) failed to recognize the extremely harmful nature of
the very last words of the prosecutor enlisting jurors to join
his team.

supported.
Mr. Ferrara: Objection your honor.
The Court: Hold it."

(IV:626-627)

Judge Wernick's decision found at page 30

that "the prosecutor's comments exceeded fair inferences from

the evidence and suggested that Jarvis had a unique ability

to obtain the truth from the defendant, where no such evidence

was introduced",id., "improperly indicated that he had per-

sonal knowledge... describing the fact that the officers were

on call 24 hours a day and had probably about the same amount

of sleep as the defendant",id, and at page 29 found that "in

suggesting that the agents did not create evidence against the

defendant, the prosecutor stated that for the defendant to be

innocent, the jurors would have to believe they would risk

their careers to create evidence to reach conclusions not sup-

ported... This statement invited an inference wholly unsup-

ported by the record, because there was no evidence that the

agents careers would have been at risk had they created evi-

dence or given false or incorrect testimony at trial",id.

Without a detailed explanation the 01-P-

1626 panel decision page 26 n.16 rejected the first two sec-

tions of closing argument which were not objected to; and, with

respect to the "risk their reputations and careers to create

evidence" argument, the panel agreed at page 23-24 that argu-

ment should not have been made but at pages 24-26 held the

trial judge's general instructions precluded a miscarriage of

justice finding,id, without the appeals court considering the

-28-

MONWEALTH V. MOSBY, _____Mass.App.Ct. _____(1981) that I don't
have in my cell, and the outrageous closing prosecutor's ar-
gument should have been raised on appeal since the D.A. ex-
cluded the same evidence, COMMONWEALTH V. MOSBY " followed
by letter citation of "U.S. V. RICHTER, 826 F.2d. 206,209-211
(2nd Cir.1987) (and cases cited) won on clearly improper ar-
gument that the police wouldn't risk their careers,id, just
like your case, Tr.IV:626-627."

### MATERIAL FACTS RELATED TO THE PROSECUTOR'S ARGUMENT BOLSTERING VOLUNTARINESS OF THE CONFESSION USING FACTS NOT IN THE RECORD

Nancy Westcott testified:

"Q. And would you describe for the jury what
    George's appearance was when you saw him
    at the police station ?
 A. He looked very fatigued, he was a mess,
    very upset, tired.
 Q. Did you make any observations about his
    physical person when you saw him there ?
 A. Yes. He looked like he had been ruffed
    up. He had some red marks on his face.
    George had opened his coat and said, look
    what they did to me. He had red marks on
    his chest.
 Q. Did he say anything to you about-- did
    he make any request ?
 A. Yes. He wanted us to get him an attorney.
    He said that.
    Mr: Vottero: I object to his conversation.
    The Court: Yes, sustained.
 Q. By Mr. Ferrara. Did he indicate to you
    how he was feeling at that time.
 A. Yes, he did.
 Q. What did he tell you ?
    Mr. Vottero: I object, your Honor.
    The Court: You can't repeat what someone
    else told you. That's hearsay."

(III:541-542)

-26-

when no such testimony was presented from her (I:126-170).
When no direct evidence of penetration was introduced at
trial defense counsel also failed to move for a mistrial and
failed to seek curative instructions (IV:630) for the fore-
going obviously improper argument (IV:616,618) and the im-
proper opening statement by the prosecutor that "he raped
her. He put something in her vagina" (I:106).

Following closing argument defense counsel
also failed to move for a mistrial or seek curative instruc-
tions (IV:630) for the nonexistent rape charge improper
credibility vouching misused by the prosecutor to secure that
conviction:

> "There isn't a confession to a rape in
> there. There is a confession (to) being
> in the home. There is not more than one
> person in there on 27 Malibu Drive with
> Mary Prekop on November 30. The evidence
> of his guilt is overwhelming, but take a
> minute and put yourself in the world of
> George Perrot's innocence. What kind of
> world is it where George Perrot is in-
> nocent ? It's a world where two FBI agents
> get together and risk their reputations
> and careers to create evidence to reach
> conclusions not supported.

> Mr. Ferrara: Objection, your honor.

> The Court: Hold it.

> Mr. Vottero: It's the kind of world where
> Tom Kelly and Mr. Jarvis get together to
> create evidence to pin on this poor man.
> It's the kind of world where for him to be
> innocent there has to be such a conspiracy
> you can't believe. They may have to take
> the blood and shake it on the-- lets get a
> little on the gloves. Pull out one of George's
> hair. Though, it's in the heat of a rape.
> And the FBI finds that single hair, That's
> preposterous. It's prepos-

-24-

## 01-P-1626 PANEL FALSE MISREPRESENTATION OF RECORD FACTS ON THE PRESUMPTION OF IN-NOCENCE DECISION AND OMISSION OF JUDGE WER-NICK'S FINDINGS ON RELATED INSTRUCTION FLAWS:

Judge Wernick's attached decision (pages 20-25) focused on four related argument erros which repeatedly derrogated the presumption of innocence (IV:615,626-627,628, 629) as appellee's 01-P-1626 brief (page 12-19) also clearly presented, id.

The appeals court decision (pages 12-20), how-ever, falsely misrepresented that the new trial motion judge merely addressed two closing argument errors (IV:615,629), concerning the presumption of innocence, while the panel ig-nored related instrcutional flaws and focused instead on burden of proof instructions, id, without recognizing the ambiguous and extremely weak, or insufficient, evidence of rape which such instructions had no curative effect on.

The 01-P-1626 panel did not rule that the motion judge abused his discretion when his decision (pages 22-23) found:

> "The error was compounded by additional improper argument by the prosecutor and by the judge's instructions. Here no curative instructions were given (none were sought). The trial judge had a duty, however to correct arguments impinging on constitutionally protected rights. The better practice is for the judge to inter-vene on his own motion. Instead, the judges's general instructions, although accurately stating the burden of proof, misstated the effect of the presumption of innocence very much as the prosecutor had, by suggesting that the defedant has

where Tom Kelly and Mr. Jarvis get together to create evidence to pin on this poor man. It's the kind of world where for him to be innocent there has to be such a conspiracy you can't believe. They may have to take the blood and shake it on the-- lets get a little on the glove. Pull out one of George's hair. Though, it's in the heat of a rape. And the FBI finds that single hair. That's preposterous. It's preposterous."

(IV:627)

"the world of George[3] Perrot's innocence requires somebody else to be doing these things."

(IV:628)

"Don't let your emotion about what happened to Mary Prekop influence your verdict. Don't let your emotion about this young man and what he's done affect your ability to judge the evidence fairly. He was presumed innocent. He is not any longer."

(IV:629)

Without any possible strategic reason, trial defense attorney John Ferrara failed to object (IV:630) to these four obviously incorrect burden shifting statements of law related to the presumption of innocence (IV:615,627,628,629) intrinsically linked to the non-existant evidence of penetration which otherwise would have resulted in aquittal on the rape allegations.

The record reflects no strategic reason for omitting these issues and infact direct appeal attorney Seiger received several (attached) letters on these points, on of which cited "MAHORNEY V. WALLMAN,____F.2d.____(10th Cir.1990-1992) (best bad closing derrogating presumption of innocence)"

-20-

"well he moves to that different
home and he breaks into that home
and he rapes that woman".
(IV:627)

"then he raped her. It was an ag-
gravated rape. A rape done during
the commission of this burglary.
And then he stole from her purse
and left. I ask that you look at
this evidence, that you consider
what is reasonable doubt and what
is not and render the truth so
that we may confront George Perrot
with what he could not confront
himself with, that he is guilty of
these crimes".
(IV:630)

Inexperienced n10/ direct appeal attorney

Kenneth Seiger failed to brief the issues of insufficient evi-

dence of penetration, combined with inexperienced n11/ trial

counsel's failure to object to obviously improper argument mis-

representing the victim testified, "something was put inside

my private parts" (IV:618) when insufficient fresh complaint

hearsay did not support repeated "rape" arguments (I:106, IV:

617-618,624,626,627,630) combined with counsel's failure to re-

quest a contemporaneous limiting instruction that fresh com-

-18-

n10/ Issues were not federalized in COMMONWEALTH V. PERROT, 38
Mass.App.Ct. 478(1995) which was attorney Seiger's first ap-
peal in which his lack of experience was established by judge
Wernick's new trial motion decision.

n11/ In defendant Perrot's 1992 trial Attorney John Ferrara con-
ceeded his lack of experience when attorney Ferrara stated "I
have to plead ignorance to that RODRIGUEZ charge" (IV:561) and
when the prosecutor made the mistake of not having Mary Prekop
testify to any money being taken in her direct testimony (I:126-
147) attorney Ferrara made the mistake of cross-examing her to
allow the prosecutor to add evidence of the element of robbery
in redirect examination (I:167). Attorney Ferrara also refused
to alert judge Simons of judge Moriarty's prior exclusion of 8%
product rule opinion testimony (first trial transcript IV:3-6)

> vagina, but I'm not sure what
> it was. He kept his pants on.
> I never saw his penis.(I:172)

A crucial question in the miscarriage of justice review of the strength of the Commonwealth's life sentence rape conviction case (with likelihood of death in prison following multiple five year parole set backs based on the nature of any aggravated rape conviction) turns on the courts factual determination of the victims testimony concerning feeling something wrong:

> "Q. and at that time you didn't see anybody
>     in the kitchen is that right ?
> A. Nobody was in the kitchen because the
>    door was locked.
> Q. And you went up to the door and you had
>    Some sense ?
> A. some sense, some feeling that something
>    was wrong there."
>    (I:150)

> "Q. When you say that he molested your private
>     parts let me just ask you, Ma'am, did he
>     put something inside of you ?
> A. He must have because it made me feel un-
>    confortable and something was wrong."
>    (I:140)

If the victim could feel something was wrong without seeing anyone, the likelihood that she felt something was wrong without penetration is equally strong, making the evidence of rape extremely weak or nonexistant.

-16-

"abuse of discretion in allowing the defedant's motion for a

new trial",id.

**MATERIAL FACTS RELATED TO UNWAIVED CONFRONTA-
TION CLAUSE VIOLATIVE FRESH COMPLAINT EVIDENCE
INEFFECTIVE COUNSEL ALLOWED TO BE IMPROPERLY
ARGUED AND CONSIDERED FOR IT'S FULL PROBATIVE
VALUE:**

The trial judge gave directly conflicting in-

structions stating "the exhibit numbers are of no consequence

to you... and the exhibits in this case are evidence and are

to be considered" (IV:642), "and there is a number of exhibits,

all of which will go with you to the jury room. You will have

an opportunity to review them to whatever extent you feel you

wish, they are evidence".(IV:641) When contrasted with "the

statement of fresh complaint by the victim of a sex crime made

reasonably promptly, under all the circumstances, are admis-

mible for limited purpose of corroboration of the victims tes-

timony. It is not positive evidence or direct proof that the

event occurred. It is admitted solely for your consideration

for whatever weight you deem it provides on your assessment of

the truthfulness of Mary Prekop on the witness stand during

this trial and of course, **any detail mentioned in the fresh

complaint that was not testified by the witness, Mary Prekop

can't be considered n6/ as direct evidence**".(IV:651), "Direct

-14-

n6/ This instruction contained the"negative pregnant imperative",
COOL V. UNITED STATES,409 U.S. 100,102n3(1972)that exhibit fresh
complaint details could be considered as direct evidence if
jurors were persuaded that Mary Prekop testified to any detail
contained in the statement they took with them to consider
during jury deliberations,id.

The Appeals Court panel also mistakenly found
the strength of the Commonwealth's case included "the presense
of gloves consistant with those owned by the defendant's girl-
friend or his sister" (01-P-1626 decision page 29) when trial
evidence showed conclusive denials of ownership (III:545-548).

## THE 01-P-1626 DECISIONS DE NOVO AND BURDEN SHIFTING LEGAL STANDARDS INCLUDE OMISSION OF SIGNIFICANT ERROR OF LAW AND ABUSE OF DISCRETION STANDARDS:

After an extensive hearing, from which no tran-
script of Commonwealth concessions or insufficient reply to
judicial questing was before the 01-P-1626 panel, Superior
Court Judge Wernick's attached decision includes extensive
Rule 30(b) findings that the defendant satisfied his intial
burden of showing sufficient weakness and disputed facts in
the strength of the Commonwealth's case, combined with con-
stituionally flawed closing argument related thereto which
supported the motion Judge's exercise of discretion granting
a new trial based on his finding a substantial risk of mis-
carriage of justice.

Within the twenty 01-P-1626 panel decision
references to the miscarriage of justice standard (pages 2 n.2,
7 n.7,9-10,18-20 n.14,23,25,26 n.17,28 n.18,29) the Appeals
Court noted that "while the defendant frames much of his argu-
ment in terms of ineffective assistance of trial and appellate
counsel, it has been held that, at this stage of the proceed-
ings, the standard of review for ineffective assistance is es-
senttially the same as that of a substantial risk of a mis-
carriage of justice" (page 2 n.2) and "the defendant has the
heavy burden of clearly demonstrating such a risk" (01-P-1626
decision page 10).

The attached 01-P-1626 decision page 8 shows
the panel used de novo standard of appellate review, id, with-
out deference to the motion Judge's exercise of discretion
and without reviewing the hearing transcript and full record
of evidence that was considered by Judge Wernick.

-12-

Judge Wernick's findings also included:

> "Although the Commonwealth's case was
> strong... <u>the case was certainly not
> overwhelming</u> or irrefutable. The victims
> exculpatory testimony <u>weighed heavily in
> the defendants favor</u>... there were <u>signi-
> ficiant issues regarding the gloves</u> al-
> legedly found on the bed... that <u>only four
> of the thirteen genetic markers</u> could be
> positively identified from the supposedly
> fresh stain on the bed <u>tested by the FBI</u>,
> raised a question of how fresh it really
> was and <u>whether the fresh stain was
> actually the old stain.</u> There were also
> substantial issue's regarding <u>whether the
> defendant actually gave a written confes-
> fes</u> to the break in (he never confessed to
> the assult on Prekop)"

When rejecting a miscarriage of justice find-

ing utilizing the purportedly strong Commonwealth's case, at

page 6 of the 01-P-1626 decision, the one-sided panel

opinion also noted:

> "A pair of rainbow-colored women's knit
> <u>gloves found at the rape scene</u> that did
> not belong to the victim but were <u>iden-
> tical to the defendant's sister's gloves</u>,
> which the defendant admitted in his
> statement he was wearing when he began
> his criminal activities on November 30
> and <u>which his sister told the police when
> questioned a week later she could not
> locate</u> and <u>which also bore traces of blood
> consistant with the defendant's</u>"

The failure of the 01-P-1626 panel to re-

view a transcript of the evidence is indicated by trial test-

imony from the defendant's sister on the gloves police

showed her because she "told him no, they were not mine" but

"looked familiar" because she "thought they were George's

girlfriend, Lisa's gloves" (III: 546) and there was no sub-

The so-called n3/ signed confession omitted

any admission of rape and merely stated that when George Perrot:

> "left 33 Covel street and went to
> 27 Malibu drive. I opened the door
> to the breezeway and kicked the
> side door in. I started to go through
> the house and a little black dog
> started barking and I ran out of the
> side door" (III:490)

Because neither the prosecutor nor the defense

introduced any medical records of the victim and no physical

evidence of sexual assault corroboration was introduced at

retial. A classic duel of credibility that precluded a harm-

less error finding was created by interrogating officer Thomas

Jarvis testifying that George Perrot "also stated that he

**never touched the woman**" (III:519) n4/.

The prosecutor's closing argument also pointed

out that "this 17 year old boy isn't going to acknowledge that

he committed an aggravated rape of an 80 year old woman" (IV:

626), "there isn't a confession to a rape in there" (IV:626).

-8-

---

n3/ Pages 29-31, footnote 20 and 22 of the 01-P-1626 panel de-
cision focused on the mistaken factual premise that "the Com-
monwealth's case was strong" for it's overruling the motion
judges miscarriage of justice finding and reinstating the ag-
gravted rape conviction life sentence without reviewing the weak
or insufficient evidence of penetration.ALOFAR should be granted
to resolve the question of whether prior direct appeal counsel
was ineffective for not briefing the insufficient evidence of
penetration, COMMONWEALTH V. CORMIER, 41 Mass.App.Ct. 76(1996)
or correcting the 01-P-1626 panel's incorrect fact finding.
n4/ Trial defense counsel made a non-strategic error by waiving
argument on insufficient evidence of penetration to support rape
conviction (III:525)

After the Commonwealth successfully re-
versed the allowed motion for a new trial on May 12, 2003
COMMONWEALTH V. PERROT 01-P-1626, appellate attorney Graham
abandoned the case and successor C.P.C.S. assigned attorney
James M. Fox refused to include the following facts and
legal argument in his ALOFAR. A motion for leave to late file
this supplemental ALOFAR is filed herewith after the appeals
court denied pro se motion for late rehearing on December    ,
2003.


## STATEMENT OF SUPPLEMENTAL ALOFAR FACTS
## THE WEAK OR INSUFFICIENT, AGGRAVATED RAPE EVIDENCE


The attached 01-P-1626 docket entries in-
dicate no transcript of trial evidence was transmitted to the
appeals court and the attached decision makes a blanket hold-
ing that overwhelming undisputed evidence precludes a miscar-
riage of justice. The 01-P-1626 decision does not consider the
following weak or insufficient, evidence of aggravated rape
that was highly disputed at trial n2/.


-6-

---

n2/ Reinstatement of the life sentence for aggravated rape
which appellee Perrot has always maintained was a false ac-
cusation, has the practical foreseeable prejudicial effect
of a five year set back when he see's the parole board.in
2008 and likelihood of a series of set backs and possible death
in prison. All facts contained herein are sworn under pain and
penalty of perjury and all record citation are accuarte.

VII. WHETHER THE APPEALS COURT'S DECISION REVERSING THE AL-
LOWANCE OF A NEW TRIAL WAS CLEARLY ERRONEOUS WHERE
THERE WERE NO SPECIFIC CURATIVE INSTRUCTIONS GIVEN FOR
THE THE OBJECTED TO CREDIBILITY VOUCHING AND EXCLUDED
EVIDENCE IMPROPER ARGUMENTS, COMMONWEALTH V. McCOY 59
MASS. APP. Ct. 284, 294-297 (2003); PAGANO V. ALLARD
218 F.SUPP. 2d. 26, 36 (D. MASS. 2002); COMMONWEALTH V.
O'BRIAN 56 MASS. APP. Ct. 170, 173 (2002) ?

IX. WHETHER THE APPEALS COURT PANEL'S FAILURE TO SPECIFI-
CALLY FIND "SIGNIFICANT ERROR OF LAW OR OTHER ABUSE OF
DISCRETION IN ALLOWING (THE) MOTION FOR A NEW TRIAL".
COMMONWEALTH V. MARTIN 427 MASS. 816, 817 (1998); COM-
MONWEALTH V. HILL 432 MASS. 704, 710 n. 14 (2000), IN-
DICATES THE PANEL ABUSED IT'S DISCRETION BY NOT USING
THE CORRECT  STANDARD OF APPELLATE REVIEW ?

X. WHETHER THE 01-P-1626 DOCKET ENTERIES NOTING NO TRIAL
EVIDENCE AND NO NEW TRIAL MOTION HEARING TRANSCRIPTS
WERE TRANSMITTED TO THE APPEALS COURT VIOLATED DUE PRO-
CESS, BUNDY V. WILSON 815 F.2d 125, 132-136 (1st Cir
1987) AND WHETHER THE APPEALS COURT'S FINDING OF OVER-
WHELMING EVIDENCE PRECLUDED MISCARRIAGE OF JUSTICE RE-
VIEW WAS    OBJECTIVELY UNREASONABLE, MITCHELL V.
ESPARZA 124 S. CT.7,12 , 539 U.S. _____ , 74 CR. L. RPTR.
2063, 2064 (November 3, 2003); LOCKYER V. ANDRADE 538
U.S. 63, 75-77 (2003) WHERE.  THERE WAS EXTREMELY WEAK
AND HIGHLY CONTRADICTED, OR INSUFFICIENT EVIDENCE OF
ANY RAPE PENETRATION OCCURING, AND PORTIONS OF JUDGE
WERNICK'S PREJUDICIAL MISCARRIAGE OF JUSTICE FINDINGS
WERE OVERLOOKED BY THE 01-P-1626 PANEL ?

STATEMENT OF SUPPLEMENTAL ALOFAR POINTS

I. WHETHER THE APPEALS COURT AND MOTION JUDGE INCORRECTLY
   CONSIDERED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
   GROUNDS WAIVED, WHEN THEY WERE NOT PRESENTED IN THE
   DIRECT APPEAL, IN LIGHT OF THE INTERVENING DECISION IN
   MASSARO V. UNITED STATES, 123 S.Ct. 1690 (April 23, 2003)?

II. WHETHER THE APPEALS COURT REVERSAL, OF THE ALLOWED
    MOTION FOR A NEW TRIAL, VIOLATED DUE PROCESS WHERE THE
    PANEL "ARBITRARILY AND CAPRICIOUSLY DECLINED TO CON-
    SIDER", BUNDY V. WILSON 815 F.2d 125, 133 (1st Cir 1987)
    THE INEFFECTIVE DIRECT APPEAL COUNSEL GROUND WHICH
    MOTION JUDGE WERNICK FOUND NOT TO HAVE BEEN WAIVED?

III. WHETHER THE APPEALS COURT REVERSAL, OF AN ALLOWED
     MOTION FOR A NEW TRIAL, WAS CLEARLY ERRONEOUS WHERE THE
     PANEL FAILED TO APPLY A CUMULATIVE INEFFECTIVE ASSISTANCE,
     CARGLE V. MULLIN, 317 F.3d 1196 (10th Cir 2003); WASHING-
     TON V. HOFBAUER 228 F.3d 689 (6th Cir 2000) OF APPELLATE
     AND TRIAL COUNSEL ANALYSIS, ROE V. DELO, 160 F.3d 416
     (8th Cir 1988)?

IV. WHERE COUNSEL'S REFUSAL TO FOLLOW HIS CLIENTS DIREC-
    TION TO BRIEF MERITORIOUS ISSUE'S, CLEMMONS V. DELO 124
    F.3d 944, 948 (8th Cir 1997) RESULTED IN PREJUDICIAL
    LOSS OF 28 USC 2254 HABEAS CORPUS REVIEW RIGHTS, WHETHER
    THE SUPREME JUDICIAL COURT SHOULD RESTART THE 28 USC §
    2244 CLOCK BY VACATING AND REINSTATING THE CONVICTION,
    COMMONWEALTH V. STUBBS, 15 MASS. APP. Ct. 955 (1983) AS
    THE PROPER EQUITABLE REMEDY FOR INEFFECTIVE ASSISTANCE
    OF DIRECT APPEAL COUNSEL?

-2-

12C.  <u>Ground Three</u>:  The cumulative prejudicial effect of the prosecutor's arguments violated the Petitioner's Fourteenth Amendment right to a fundamentally fair trial: n.5/

    <u>Supporting Facts</u>:  As set out in the State Superior Court New Trial Motion Memorandum of Law, set out in Superior Court Judges decision pages 15-39, set out in 01-P-1626 Appellate brief pages 2-6, 12-45, set out in assigned Counsel's Alofar and the <u>pro</u> <u>se</u> Alofar pages 3-47, incorporated herein by reference, your Petitioner was denied a fundamentally fair trial by the prejudicial cumulative effect of the prosecutors unconstitutional improper arguments (including, but not limited to misstating and derrogating the presumption of innocence, credibility vouching for witnesses, referring to evidence not in the record, referring to, and taking unfair advantage of, excluded evidence and enlisting jurors on the side of the government).

5c

12A.  <u>Ground One</u>:  Sixth and Fourteenth Amendment violation of Petitioner's right to the effective assistance of direct appeal counsel: n.1/

    <u>Supporting Facts</u>:  As set out in the State Superior Court new trial Motion Supporting Memorandum of Law set out in Superior Court Judges (attached) 9/11/01 decision pages 12-15, 38-39, set out in 01-P-1626 Appellate Brief pages 10-12, 41 and the attached pro se Alofar pages 2, 9, 18, 19-21, 35, 39-42, 46-47, incorporated herein by reference. your Petitioner was denied the effective assistance of direct Appeal Counsel n.2/.  Direct Appeal Counsel's refusal to brief ineffective assistance of Trial Counsel as set out in Ground Two, <u>infra</u> incorporated herein by reference, and refusal to brief the prosecutor's improper argument, as set out in Ground Three, <u>infra</u> incorporated herein by reference, prejudiced Petitioner by resulting in the unconstitutional affirmance of his direct appeal, obstruction of any timely filing of a 28 USC 2254 Habeas Corpus Petition on these unexhausted issues. n.3/  And obstruction of any more time by State Post-Conviction Motion, Direct Appeal Counsel's errors were non strategic and these grounds were obviously stronger than issues Counsel briefed in the appeal.

---

n.1/  In addition to asserting the actual innocense exception based on insufficient evidence of rape as described in <u>pro se</u> Alofar pages 6-8, 14-18, 29-30, 36, This Court must first decide his gateway claim ineffective Appellate Counsel, <u>Dretke v. Haley</u>, 124 S.Ct. 1847 (2004) seeking State Appeal Affirmance to be vacated followed by Judgment being reinstated, to restart 28 USC 2244 one year clock, <u>Commonwealth v. Stubbs</u>, 15 Mass. App. 955 (1983) because "cases involving Sixth Amendment deprivations should be tailored to the injury suffered from the constitutional violation", <u>United States v. Morrison</u>, 449 U.S. 361, 364 (1981); <u>United States v. Duran-Benitez</u>, 100 F.Supp. 2d 135, 155 (2000); <u>Prou v. United States</u>, 199 F.3d 37, 49-50 (1st Cir. 1999).

n.2/  Appellate Attorney Kenneth Seiger's failure to Federalize issues, combined with refusal to brief issues described in Petitioner's letters, and CPCS conflict burdened refusal to assign counsel to file timely post-conviction motion, in addition to Petitioner's inability to timely filed a post-conviction motion himself should require a Habeas Rule 8 Evidentiary Hearing, <u>Mapes v. Coyle</u>, 171 F.3d 408, 427-429 (6th Cir. 1999).